FREDERICK F. SINGER et al., Respondents, *v.* ALAN WALKER, Doing Business as WALKER'S MINERALS, Defendant, and ESTWING MANUFACTURING Co., INC., Also Known as ESTWING MANUFACTURING COMPANY, Appellant.

First Department, May 11, 1972.

*William F. McNulty* of counsel (*Abraham Burstein* and *Anthony J. McNulty* with him on the brief; *Zelby & Burstein,* attorneys), for appellant.

*Harry L. Koenig* for respondents.

TILZER, J. Defendant appeals from a judgment in favor of plaintiff Michael Singer, in the amount of $130,000, and in favor

of plaintiff Frederick Singer in the amount of approximately $2,000.

In February of 1960 plaintiff Michael Singer received as a birthday present from his aunt a 14-ounce geologist's hammer. It was this hammer which caused the complained of injuries. The hammer was manufactured by the defendant Estwing Manufacturing Co., Inc. On the neck of the hammer was printed the following:

"Unbreakable Tools

Estwing Mfg. Co., Rockford, Ill."

The hammer had been advertised to the trade as being unbreakable, and was sold under a guarantee, which provided that "All Estwing Tools are guaranteed unbreakable in all normal use." On April 17, 1960, plaintiff Frederick Singer, his son Michael and a friend, went on an outing to collect rock specimens. Upon arrival at the destination the members of the party went in search of quartz since they were seeking topaz which is contained therein. The geologist's hammer had been taken on the trip and during the course of the day Michael had occasion to use it. There came a time when one of the boys found a two- to three-pound quartz rock, which was brought to Frederick Singer. Frederick Singer decided "to open up the rock, to chip it open, to see whether there was any topaz [in it]." While on his knees, he placed the rock on the ground and struck it as hard as possible with the hammer. We note that Frederick Singer testified that he was trying to break a piece off the rock. Suddenly, Michael Singer, who was kneeling alongside his father, cried out. The father looked up and noticed a speck of blood on Michael's right eyelid. We need not consider the subsequent events of the day in detail, except to note that Michael was returned to New York on the same day, where he underwent an operation for the removal of the foreign substance from the eye. The substance was removed, but unfortunately further difficulties developed, necessitating the removal of the right eye.

Initially, it is to be noted that at the trial there was considerable testimony as to whether the foreign substance removed from the eye was a chip from the head of the hammer or a piece of mineral. It is conceded on appeal, however, that on this issue a question of fact was presented for determination by the jury. We believe that the finding that the substance came from the hammer, implicit in the jury's verdict, was amply supported by the evidence.

The case was submitted to the jury on three theories of liability: (1) negligence in design and manufacture, (2) breach of

the express warranty and (3) breach of the implied warranty that it was reasonably fit for the purposes intended. With regard to the negligence cause of action defendant argues that the expert testimony fell far short of establishing defective design or manufacture, and merely amounted to little more than an opinion that the hammer could have been improved by using some other method of manufacture or a different design. Further, it is urged that the testimony offered by plaintiff's expert witness was of no probative value since it was based upon the assumption that the hammer was being used in a normal manner for the purpose intended. Further, the question of proper use is raised in connection with the other two causes of action based upon warranty. With respect to this issue it is argued that the evidence established that Frederick Singer was not using the hammer for the purpose intended. Finally, it is asserted that the judgment must be reversed, since Michael Singer was a '' non-user '' of the geologist's hammer, and hence the warranties, under existing New York law, do not extend to him.

As stated in the dissent, since the case was submitted to the jury on three separate theories of liability, and since a general verdict was returned, the judgment must be reversed unless all three theories of liability can be sustained. (*Clark* v. *Board of Educ. of City of N. Y.*, 304 N. Y. 488; *Durham* v. *Metropolitan Elec. Protective Assn.*, 27 A D 2d 818.) We believe, however, that all three of the causes of action were established and hence, that the jury's verdict was proper.

We first consider the question of whether the testimony established that Frederick Singer misused the hammer at the time of the accident. The law is clear that a manufacturer need not anticipate that his product will be misused (*Campo* v. *Scofield*, 301 N. Y. 468). We do not believe that it was established as a matter of law that the hammer was being misused. The court charged that '' the testimony on the manner of what is or is not the proper use of a geologist's hammer  *  *  *  is a question of fact ''. With this we fully agree.

Clearly, Frederick Singer utilized the hammer to break open the rock. It is argued that the expert testimony established that the hammer was not intended to be used to break or split open a rock of this size and hardness, but its purpose was limited merely to chipping an edge off the rock. Defendant maintains that if one wished to split such a rock a chisel or small sledge hammer should be used. Such an argument presents a rather subtle distinction between chipping and breaking. It was not shown that this particular hammer came with any instruc-

tions with regard to its use, or that the manufacturer took the necessary precautions to warn as to the limitations on its use. Defendant well knew that this hammer was purchased and used by hobbyists and could not assume that the purchasers would be aware of the distinction between chipping and breaking. The trial court put it quite well when questioning the witness Walker. '' But the expectation is that the surface of your hammer is to be used against the surface of the object you are hitting, is that right?'' The purpose of the hammer was that it would be struck directly against hard objects, i.e., rocks, and that is what Frederick Singer was using the hammer for at the time of the accident.

In any event, as indicated above, we believe that a question of fact was raised concerning the proper use of the hammer. The record did not establish so clearly, as urged by defendant, that the hammer should only be used for chipping. The witness Walker testified he '' would use a hammer to split open a rock ''. Dr. Manson testified that the hammer is used '' to deliver a sharp hard blow to any piece of material to try and see what's inside it, any piece of rock or stone '' (the very use to which Frederick Singer was putting the hammer). Dr. Manson further testified that it might very well be preferable, under certain circumstances, to use the geologist's hammer to break open the rock rather than use a chisel, since use of a chisel might increase the chance of destroying the topaz.

We now consider whether each of the three causes of action submitted to the jury was established. We have already concluded that the finding implicit in the jury's verdict, that the hammer was being used in a normal manner was proper. The defendant in its brief on appeal states that '' (n)o one disputes the proposition that Estwing would have been negligent if this 14-ounce geologists' hammer ' could fragment in normal use ' and if it ' failed to warn purchasers that said hammer could fragment in normal use ' * * * or if the hammer was not properly designed or constructed for the ' normal use ' for which it was designed and manufactured and intended to be used * * * or if said defendant ' manufactured and distributed for sale a geologist's hammer which, when used as intended ', broke or fragmented ''. The evidence clearly supports a finding of negligence in design and manufacture, as well as failure to warn. Plaintiff's expert testified in effect, that the hammer was defectively designed and that if the hammer had been beveled there would be less likelihood of its fragmenting. He also stated that the hammer would be better fit for its intended

use if it had been rim-tempered. Further, it is quite clear that the express and implied warranties were breached. The hammer, guaranteed to be unbreakable in all normal use, fragmented while being used for the purpose intended. The express warranty was in fact false, and from the record it is clear that the hammer was not of merchantable quality. Indeed, it does not really appear that defendant disputes that, if the hammer broke in normal use, the warranties were breached.

While the defendant concedes that under present New York law, " it is clear that any ' user ' of the warranted product can sue for breach of warranty, express or implied ", it urges nevertheless that Michael Singer is not within the protective scope of the warranties as he was not the user of the hammer. It is urged that the Court of Appeals has not, as of yet, extended the protective scope of warranties to nonusers.

In the first place, we do not believe that Michael Singer is properly characterized as a nonuser. The term " non-user " refers to a bystander — to a person who has no real nexus to the instrumentality causing the injury except that he is injured. Michael Singer was not a stranger to the product; in fact the hammer belonged to him. He was not a mere onlooker at the time of the accident, but rather, was engaged with his father in the project of finding and collecting the rock specimens and in further examining them to determine whether they contained topaz. Now it is true that he did not swing the hammer at the very moment in question, but the hammer was being used for his benefit in the joint undertaking. The father's use of the hammer in effect, constituted a joint use by the father and son. Hence, for the reasons above given Michael Singer was a user and is well within the protective scope of the. law of warranties.

Even if Michael is to be considered a nonuser, we nevertheless are of the opinion that under New York law, the scope of the warranties, express or implied, should be extended to him.

The recent years have seen an ever widening expansion of the concept of liability of a manufacturer to remote purchasers and users of his product. Much has been written on the subject (see, e.g., Prosser, the Assault Upon the Citadel [Strict Liability to the Consumer], 69 Yale L. J. 1099; James, Products Liability, II, 34 Tex. L. Rev. 192; Strict Products Liability and the Bystander, 64 Col. L. Rev. 916), and there has been much discussion as to whether the action sounds in contract or in tort. From the recent cases it is apparent that a breach of warranty resulting in injury is now also considered as a tortious wrong separate and apart from the sales contract. (*Goldberg* v.

*Kollsman Instrument Corp.,* 12 N Y 2d 432, 436; *Randy Knitwear* v. *American Cyanamid Co.,* 11 N Y 2d 5.) As is well known, the courts in New York have gradually eroded the concept that privity is required in order to maintain an action based on breach of an express or implied warranty. The previous and long-standing law on the subject was that " [t]here can be no warranty where there is no privity of contract." (*Turner* v. *Edison Stor. Battery Co.,* 248 N. Y. 73, 74.) The erosion of that concept began in *Greenberg* v. *Lorenz* (9 N Y 2d 195). In that case the Court of Appeals allowed recovery by the infant plaintiff although it was her father who made the purchase of the canned food in question. The court stated: " So convincing a showing of injustice and impracticality calls upon us to move but we should be cautious and take one step at a time. To decide the case before us, we should hold that the infant's cause of action should not have been dismissed solely on the ground that the food was purchased not by the child but by the child's father. Today when so much of our food is bought in packages it is not just or sensible to confine the warranty's protection to the individual buyer. At least as to food and household goods, the presumption should be that the purchase was made for all the members of the household." (*Greenberg* v. *Lorenz,* 9 N Y 2d, at p. 200.)

*Greenberg* v. *Lorenz* was followed by *Randy Knitwear* v. *American Cyanamid Co.* (11 N Y 2d 5, *supra*). In that case the Court of Appeals held that a manufacturer could be held liable to a remote purchaser based upon breach of an express warranty. The product involved was a chemical used to treat fabrics in order to prevent shrinkage. The Court of Appeals there stated: " The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to an old and out-moded technical rule of law which, if observed, might be productive of great injustice. The manufacturer places his product upon the market and, by advertising and labeling it, represents its quality to the public in such a way as to induce reliance upon his representations. He unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality and, in fact, it is so purchased and used. Having invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when the expected use leads to injury and loss, by claiming that he made no contract directly with the user." (*Randy Knitwear* v. *American Cyanamid Co.,* 11 N Y 2d, at p. 13.)

Subsequently in *Goldberg* v. *Kollsman Instrument Corp.* (12 N Y 2d 432, *supra*) the Court of Appeals upheld a complaint against an airplane manufacturer based upon breach of implied warranty of fitness. The action was brought by the administratrix for damages for the death of her daughter as the result of injuries suffered when the plane crashed. The Court of Appeals, however, dismissed the complaint as against the manufacturer of one of the component parts, since it was felt that further extension of the rule was not necessary to protect the passengers who had resort against the airplane manufacturer. In upholding the complaint against the airplane manufacturer the court discussed the California case of *Greenman* v. *Yuba Power Prods.* (59 Cal. 2d 67) wherein a manufacturer of a power tool was held in strict liability to a user who was not the purchaser. The California court's decision was premised upon the basis that the cost of injuries from defective products should be borne by the manufacturers who place their products on the market. And, most recently in *Guarino* v. *Mine Safety Appliance Co.* (25 N Y 2d 460) the Court of Appeals determined that a cause of action existed for breach of implied warranty in favor of parties who attempted to rescue a user of the manufacturer's defective product. The court there employed the doctrine of " danger invites rescue." (See *Wagner* v. *International Ry Co.*, 232 N. Y. 176.)

The defendant, however, takes the position that in all these cases (except of course for the *Guarino* case, 25 N Y 2d 460, *supra*) the plaintiffs were users of the product involved. It therefore concludes that the privity concept, in actions based on breach of warranty, has not been so eroded that warranties can be extended to a nonuser. We do not agree. As we view the state of the law, we are not precluded by any decision of the Court of Appeals from holding that in an appropriate case, a nonuser is protected by the warranties expressly given by the manufacturer of the product or implied by law. Rather, the thread common to the recent cases is that adherence to the requirement of privity is to be eliminated where to apply it would effect an injustice. The decisions indicate that each case must be judged on its own merits and further, that the ultimate purpose in widening the scope of the warranty is to cast the burden on the manufacturer who put his product in the marketplace. Hence, a proper balance must be sought to protect the public on the one hand, while not unduly burdening the manufacturer on the other. The circumstances in this case lead to the conclusion that it would be a grave injustice to deprive

the plaintiff of recourse against the manufacturer who sent the defective merchandise into the marketplace representing it to have qualities which it did not, simply because at the very moment of the accident, it was the father's and not the son's hand that swung the hammer. The tortious wrong having been established, the manufacturer should be answerable to the person who suffered the consequences of that conduct.

We note that the Third Department has recently allowed recovery against a manufacturer by a nonuser based upon breach of the implied warranty of fitness. (*Codling* v. *Paglia,* 38 A D 2d 154.) In that case, an automobile crossed over the road and struck the automobile in which plaintiffs were riding. In allowing recovery the court wrote as follows: '' Where a manufacturer's product is of such a character that when used for the purposes for which it is made, it is likely to be a source of danger and injury to several people if not properly fashioned, the manufacturer, as well as vendor, is liable for breach of implied warranty to persons purchasing or using the product and to persons injured rescuing persons using the product. The law, having developed to the point where it is now clear that a breach of implied warranty involving a dangerous instrumentality is a tortious wrong, separate and distinct from a breach of the sales contract (*Goldberg* v. *Kollsman Instrument Corp., supra*), there would appear to be no logic or reason in denying a right to relief to persons injured by a defective dangerous instrumentality solely on the ground that they were not themselves a user of the instrument. The manufacturer of an automobile obviously is aware that such product will be operated on the highways in conjunction with the operation of other automobiles and that a defect in its manufacture might result in danger or injury to such other users of the highways. Manufacturers of articles which may be a source of danger to several people if not properly manufactured should not be immune from liability for breach of implied warranty, a tortious wrong, to persons injured by a defectively manufactured article, where the manufacturer could reasonably contemplate injury to such persons by reason of the defect.

'' This is the law in other jurisdictions. (See *Toombs* v. *Fort Pierce Gas Co.,* 208 So. 2d 615 [Fla.]; *Piercefield* v. *Remington Arms Co.,* 375 Mich. 85; *Caruth* v. *Mariani,* 11 Ariz. App. 188; *Elmore* v. *American Motors Corp.,* 70 Cal. 2d 578; *Ford Motor Co.* v. *Cockrell,* 211 So. 2d 833 [Miss.]; Ann. 33 ALR 3d 415.)'' (*Codling* v. *Paglia,* 38 A D 2d, at pp. 158–159.)

We recognize, of course, the different danger posed by a defectively produced automobile as compared to a geologist's hammer. However, a product must be considered with reference to its intended purpose, and it could easily be anticipated that the hammer, if defective, could be hazardous. We note that in a previous appeal in this matter, on the issue of jurisdiction, the hammer was described as " a particularly dangerous instrument because of its function and the false labeling which it bore with respect to its unbreakability (Restatement, Torts 2d [Tent. Draft No. 10, April 20, 1964], § 402A)." (*Singer* v. *Walker*, 21 A D 2d 285, 288, affd. 15 N Y 2d 443.)

We therefore conclude that the judgment for plaintiff Michael Singer insofar as it rests upon breach of implied warranty of fitness or breach of express warranty was well founded, whether he be considered a user of the hammer or a nonuser.

One last point need be mentioned. It is urged that it was error to allow plaintiff to establish that subsequent to the accident defendant beveled the edges of its hammers, since such in effect, constitutes evidence of subsequent repairs. That testimony was elicited in the following manner. On redirect examination defendant's president was asked whether any manufacturer then (at the time of trial) beveled the geologist's hammer. The witness replied, "Not that I know of." On recross the witness was asked whether at the time his company beveled their hammers. An objection to the question was overruled since the door had been opened on redirect. The witness responded by saying that his company did not then bevel their edges. At that point counsel produced a geologist's hammer manufactured by defendant which was beveled. We do not believe that this was error. The witness having claimed that his company did not then produce a beveled hammer was properly subject to impeachment.

Accordingly, the judgment appealed from should be affirmed, with costs and disbursements to the plaintiffs.

McNALLY, J. (dissenting). I dissent and vote to dismiss the complaint. The defendant, Estwing Manufacturing Co., Inc., hereinafter designated " Estwing ", is a foreign corporation engaged in the business of manufacturing hammers, including geologists' hammers. While the infant plaintiff, Michael Singer, a boy then 10 years of age, was kneeling on the ground watching his father, the plaintiff, Frederick F. Singer, attempted to split open a quartz rock weighing two or three pounds with a geologists' hammer weighing 14 ounces manufactured by Estwing, which the boy had received as a birthday present from

his aunt. The hammer was never intended to be used to split open rocks. It is claimed that a chip of metal flew off the edge of the head of the steel hammer and penetrated the boy's right eye.

The geologists' hammer allegedly was purchased by the infant plaintiff's aunt from the defendant, Alan Walker, a retail seller of products of this kind engaged in business in the City of New York.

The case was tried to a jury. On the trial, the action was discontinued against defendant Walker. The case was submitted to the jury against Estwing, the manufacturer of the hammer, on three theories of liability: (1) negligence in the design and manufacture of the hammer; (2) breach of express warranty; and (3) breach of implied warranty of fitness for use. The jury returned a general verdict in the sum of $130,000 in favor of the infant plaintiff and the sum of $2,083.23 in favor of the father.

The case was submitted to the jury on three distinct and separate theories of liability, to wit, negligence, breach of express warranty and breach of implied warranty of fitness for use. The jury rendered a general verdict which did not indicate on which of the three theories of liability it was grounded. The judgment appealed from must be reversed unless the general verdict of the jury in favor of the plaintiffs can be sustained on all three theories. (*Smulczeski* v. *City Center of Music & Drama*, 3 N Y 2d 498, 501; *Fein* v. *Board of Educ. of City of N. Y.*, 305 N. Y. 611, 613; *Durham* v. *Metropolitan Elec. Protective Assn.*, 27 A D 2d 818; *Filanowicz* v. *Guarino*, 27 A D 2d 666.)

In my opinion, the plaintiffs failed to establish either of their causes of action since there is no showing that Mr. Singer was making a normal use of the hammer or was using the hammer for the purpose for which it was designed and intended. Mr. Singer was attempting to split open a rock two or three pounds in weight with a 14-ounce hammer which was never intended to be used to split open rocks but was intended to be used for the purpose of chipping pieces from the rock. There was expert testimony to the fact that a two- or three-pound rock should be split with a chisel and hammer, or with a small sledge hammer.

In *Campo* v. *Scofield* (301 N. Y. 468) it was held that a manufacturer is not required to contemplate a misuse of its product by a careless person, but is only required to contemplate injury resulting from the use of the product in the manner for which it was designed or intended to be used.

Plaintiffs' witness, Walker, testified that a chisel and small sledge hammer are best used in breaking or splitting open a quartz rock weighing two or three pounds and that after the rock is split open a 14-ounce geologists' hammer can then be used to trim the specimen. Plaintiffs' other expert, Manson, testified that in most cases the hammer in question is used to remove a portion of the rock, not to split it.

In short, it appears to me that the proof shows that the accident occurred when the hammer was not being used in a normal manner. The warranty and guarantee that the hammer is unbreakable guarantee that it is unbreakable in normal use, meaning when it is being used for the purpose for which the hammer was designed and manufactured.

Plaintiffs' expert, Silkiss, who testified the hammer was defectively designed and manufactured, based his testimony on the assumption that when the accident happened, the hammer was being used in a normal manner or in the manner for which it was designed and manufactured. The record does not support this assumption, in my opinion, and hence it lacks probative force and is insufficient to support the finding of liability. (*Quinones* v. *St. Vincent's Hosp. of City of N. Y.,* 20 A D 2d 529, affd. 16 N Y 2d 572.)

The express and implied warranties plaintiffs claim were breached by defendant are not applicable to the infant plaintiff who was not a user of the geologists' hammer involved. It is not the law of New York that an action for breach of warranty, express or implied, is available to a nonuser who is a bystander. (*Berzon* v. *Don Allen Motors,* 23 A D 2d 530; *Mull* v. *Ford Motor Co.,* 368 F. 2d 713, 717 [U.S.C.A., 2d Cir.]; cf. *Codling* v. *Paglia,* 38 A D 2d 154.)

Further, it was error for the court to allow the plaintiffs to establish that subsequent to the accident herein Estwing beveled the edges and made other changes in some of the 14-ounce geologists' hammers it manufactured. (*Barone* v. *111 East 39th St. Corp.,* 38 A D 2d 797; *Hadges* v. *New York R. T. Corp.,* 259 App. Div. 154, 155.)

NUNEZ, J. P., and KUPFERMAN, J., concur with TILZER, J.; McNALLY, J., dissents in an opinion.

Judgment, Supreme Court, New York County entered on June 29, 1971, affirmed. Respondents shall recover of appellant $50 costs and disbursements of this appeal.