NANCY MORAN, ETC. ET AL. *v.* RANDY
WILLIAMS ET AL.

[No. 99, September Term, 1973.]

*Decided January 2, 1974.*

The cause was argued before MORTON, POWERS and DAVIDSON, JJ.

*Martin H. Freeman,* with whom were *Bulman, Goldstein, Feld & Dunie* on the brief, for appellants.

*James P. Salmon,* with whom were *Sasscer, Claggett, Channing & Bucher* on the brief, for appellee Faberge, Inc. *Richard M. Schwartz,* with whom were *Leonard L. Lipshultz* and *Lipshultz & Hone* on the brief, for other appellee.

POWERS, J., delivered the opinion of the Court.

This appeal involves the question of liability of a manufacturer, Faberge, Inc., for injuries resulting from a use of its product, when no warning against such use was given on the container. The issue, a narrow one,[1] is whether the evidence would permit a finding that Faberge should have foreseen that two teenage girls would attempt to scent a burning candle by pouring Tigress Cologne [2] on the candle.

---

[1] There is no claim that Faberge breached any warranty, express or implied. Appellants say in their brief:

> "Since the date of the occurrence, June 8, 1969, preceded the date of removal of the privity requirement in the Maryland version of the Uniform Commercial Code (July 1, 1969), the case proceeded to trial as against Faberge, Inc. on the grounds of negligence only."

Nor is there a claim of negligence in the manufacture or in the packaging of the product.

[2] The word "cologne" is defined in Webster's Third New International Dictionary as follows:

> "A perfumed liquid composed of alcohol and certain aromatic oils chiefly derived from the citrus family and used as a toilet water — called also *eau de cologne.*"

Suit was filed in the Circuit Court for Prince George's County by Nancy Moran, then a minor, through her father, Elbert M. Moran, as next friend, and by Mr. Moran in his own right, against Randy Williams, a minor, and against Louis P. Grigsby. By a subsequent amended declaration Faberge, Inc. was added as a defendant. It was claimed that Faberge had a duty to warn of the product's inherent danger and that its negligent failure to do so was a proximate cause of injuries sustained by Nancy Moran.

Trial was held before a jury in the Circuit Court for Prince George's County with Judge James F. Couch, Jr., presiding.

The evidence showed that the product was marketed in a glass bottle at the top of which was a small hole, through which the contents could be applied by the user. The container was sometimes referred to in the record as a "drip bottle", perhaps to distinguish it from a spray container, which includes a propellant for application by spraying.

The testimony showing how the minor plaintiff was injured was summarized in her brief as follows:

"On June 8, 1969, the Appellant, Nancy Moran, then age 17, visited the residence of Mr. & Mrs. Louis P. Grigsby to see some friends, eventually going down to the basement club room with her date to play some records. It was a warm June night, and the uncontradicted testimony of the Appellant placed the club room temperature at around 72 or 73 degrees Fahrenheit. The club room was furnished with the usual articles (couch, shelves, record player, etc.) and there was a washing machine located behind the stairs leading down to the club room. Above the washing machine were some shelves; and on one of these shelves was a bottle of Faberge Tigress Cologne. The cologne had been given to Mr. Grigsby's wife by a friend, and Mrs. Grigsby had been using the cologne to scent her wash because of damp odors in the basement. There came a time during the evening when Nancy found herself alone with Randy Williams, then age 15, who had been living with the

Grigsbys. While they were alone, Nancy noticed a green, Christmas tree-shaped candle which was burning on a shelf behind the couch, and asked Randy if it were scented. When Randy replied that she didn't know, Nancy went over to the candle and they both smelled it to see if it was scented. At that point, Randy said, "Well, let's make it scented", and poured some of the Tigress Cologne which she had gotten from the shelf over the washing machine onto the lower part of the candle, below the flame, from the back towards the front. Nancy was standing in front of the candle and the testimony is conflicting whether she knew that Randy was about to pour the cologne. In any case, neither girl knew that cologne was flammable. In an instant there was a flame and a burst burning Nancy seriously on the neck and portions of her breasts, the result of which has left Nancy with permanent scars."

In addition, Miss Moran testified she had never perfumed a candle herself and had never heard of anyone perfuming a candle before, but she had heard of scented candles. She said that at the time it happened, she thought the fluid was a spray and was squirted on the candle, but she did not know what cologne contained, and was not even sure it was cologne. She guessed she knew that you don't pour things on lighted candles or lighted flames of any kind when you don't know what they contain.

There was also evidence of the chemical composition of the cologne, and of its flash point, that is, the temperature at which, under certain controlled conditions, its vapors would ignite when in contact with a flame, and that it was flammable. We do not consider the scientific data significant in this appeal. The jury was entitled to infer that the pouring of the cologne caused the flame, regardless of its composition or flash point.

There was testimony given by a representative of Faberge, called by the plaintiffs and uncontradicted, that Tigress Cologne had been on the market since 1942 and they had not had any complaints about a fire such as this.

At the close of the plaintiffs' evidence Judge Couch granted a directed verdict in favor of Mr. Grigsby. At the close of all of the evidence the judge denied a motion for a directed verdict in favor of the defendant Randy Williams, and likewise denied a motion of the plaintiffs for a directed verdict against Randy Williams. He reserved his ruling on a motion by Faberge for a directed verdict.

The jury found in favor of the plaintiffs against Faberge only, and assessed damages, upon which judgments nisi were entered. Thereafter Judge Couch granted Faberge's motion for judgment n.o.v., and denied the plaintiffs' motion for judgment n.o.v. against Randy Williams. Final judgments were entered in favor of all defendants for costs.

This appeal was taken by Nancy Moran and her father from the judgments for Faberge and for Randy Williams. Counsel for Randy Williams filed in this Court a motion to dismiss the appeal as to her, pointing out that appellants' brief argues no error as to her. Although the ground asserted in the motion is correct, the result is not dismissal of the appeal, but affirmance of the judgment on the merits.

Urging that the trial judge erred when he granted Faberge's motion for judgment n.o.v., appellants seek reversal, and pose the questions involved in this way:

1. Is the question of what constitutes an intended or ordinary use more properly answered against a backdrop of community experience, rather than by the pronouncements of manufacturers, and therefore, a question of fact to be decided by the jury?

2. Should a manufacturer be held liable for negligent failure to warn of dangers inherent in the use of his product where that use is reasonably foreseeable to him?

3. Could a jury find that use of Faberge Tigress Cologne near flame, in general, and in scenting a candle, in particular, was reasonably foreseeable by Faberge?

Faberge states the question in ultimate terms when it asks, "Did the plaintiffs present legally sufficient evidence

to raise a jury question as to whether, *vel non*, Faberge, Inc. was negligent?"

Appellants' first question presents two alternative answers, neither of which is correct. The only proper answer to what constitutes an intended or ordinary use of a product is to be determined from the evidence in the case in which the question arises. The evidence may show community experience; it may show names, labels, or other pronouncements by the manufacturer; but it is in the evidence that the answer must be found.

Appellants' second question is couched in general terms which presuppose that the failure to warn is negligent, that the product is inherently dangerous, and that the dangerous use is reasonably foreseeable. It begs the very question involved in this case. A manufacturer may be required to warn of a danger when a warning is necessary. One could list many foreseeable dangerous uses of gasoline, for example, but it could hardly be contended that a warning should be delivered with each sale of gasoline.

Appellants' third question, insofar as it is directed to the use made of the cologne in this case, does pinpoint the issue of whether the jury, on the evidence before it, could find that use to be reasonably foreseeable.

The rule that guides our consideration of the question before us has been stated repeatedly by the Court of Appeals and by this Court. A clear statement of the rule is found in *Smith v. Bernfeld*, 226 Md. 400, 174 A. 2d 53 (1961), where the Court of Appeals said, at 405:

> "The general rule by which the sufficiency of the evidence is to be tested when this Court is reviewing a motion for a directed verdict or judgment *n.o.v.* for the defendant is well established as being that this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover — that is, the evidence must be viewed in the light most favorable to the plaintiff."

To the same effect are *Beck v. Baltimore Transit Co.*, 190 Md. 506, 509, 58 A. 2d 909 (1948), *I.O.A. Leasing v. Merle Thomas Corp.*, 260 Md. 243, 248-49, 272 A. 2d 1 (1971), and many other cases. See also *Lusby v. First National Bank*, 263 Md. 492, 283 A. 2d 570 (1971), where the Court said, at 506:

> "Where it is manifest to the court upon the plaintiff's own showing in the uncontradicted evidence in the case that there is no rational ground upon which a verdict can be based for the plaintiff, it becomes the duty of the court to direct a verdict for the defendant, or, as in this case, grant a motion for a judgment *n.o.v.* in favor of the defendant."

We have applied the rule in a number of cases, including *Miller v. Michalek*, 13 Md. App. 16, 281 A. 2d 117 (1971), *Burns v. Goynes*, 15 Md. App. 293, 290 A. 2d 165 (1972), and *Tippett v. Quade*, 19 Md. App. 49, 309 A. 2d 481 (1973).

Since the question is whether the evidence was sufficient to present a question for the jury, we consider the record down to the close of the evidence, the posture at which the motion for a directed verdict was made. Whether the motion was granted at that time, or granted retrospectively in ruling on a motion for judgment n.o.v., the record stops at the close of the evidence. Instructions given and verdicts or answers returned by the jury are totally irrelevant to our inquiry. See *Lewis v. Accelerated Express*, 219 Md. 252, 255, 148 A. 2d 783 (1959).

The law by which we test the evidence in this case lies in the field frequently referred to as products liability. A general comment in a case involving defective manufacture is found in the opinion written by Judge Hammond for the Court of Appeals in *Babylon v. Scruton*, 215 Md. 299, 138 A. 2d 375 (1958), at 303:

> "The law now generally is that a seller or other supplier for a consideration of a chattel may be liable for harm to the person or property of a person who may be expected to be in the vicinity of the chattel's probable use if he has failed to exercise

reasonable care to make the chattel safe for the use for which it is supplied. *Prosser, Torts* (2nd ed.) Ch. 17, Sec. 84; 2 *Harper & James, The Law of Torts,* Sec. 28.2; *Restatement, Torts,* Sec. 388. The principle has been recognized and applied in Maryland. *Kaplan v. Stein,* 198 Md. 414, 420. One who supplies a chattel to another to use for the supplier's business purposes 'knowing it to be or to be likely to be dangerous for the use for which it is supplied' is subject to liability. *Restatement, Torts,* Sec. 391. So, too, is a manufacturer of a chattel, which, unless carefully or properly made, 'he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured * * *' *Restatement, Torts,* Sec. 395."

Cases involving alleged defects inherent in the basic design of a product, as distinguished from its negligent manufacture, are *Telak v. Maszczenski,* 248 Md. 476, 237 A. 2d 434 (1968), *Myers v. Montgomery Ward & Co.,* 253 Md. 282, 252 A. 2d 855 (1969), and *Blankenship v. Morrison Machine Co.,* 255 Md. 241, 257 A. 2d 430 (1969). In *Telak* the Court quoted from Restatement, *Torts,* 2d § 388, which says under the general topic of Rules Applicable to All Suppliers:

"§ 388. Chattel Known to be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for

whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

An aspect of products liability law more directly involved in the present case must be considered when a product, although designed and manufactured without negligence, may be inherently dangerous in its intended use, or other foreseeable use or misuse. There then may or may not be a duty to warn of such danger. There appears to be no duty to warn of a danger which should be known to a user, or of a danger which would not reasonably be expected to exist when the product is used in a manner for which it was intended, or which was reasonably foreseeable.

In *Katz v. Arundel-Brooks Concrete Corp.*, 220 Md. 200, 151 A. 2d 731 (1959), damages were claimed from a supplier of wet mixed concrete by the purchaser, who sustained burns when he worked in the concrete for several hours, spreading it to cover a cellar floor. There was evidence showing the chemical properties of cement. It is made of kiln-burned limestone and clay. When mixed with sand, gravel and water, it hardens into concrete. It contains alkaline ingredients which on prolonged contact with the human skin can produce chemical burn. There was evidence that among people who worked with cement these properties were well known, and that it was customary to use some protection, such as boots, pads, burlap wrappings, or gloves. Katz had never worked with concrete before and wore no protective covering. In affirming a judgment for the supplier entered upon a directed verdict the Court of Appeals said, at 203:

"There was no showing that the concrete delivered was defective, that it contained anything unusual, or that it was not safe to use in the usual and customary manner. The buyer got precisely what he ordered, wet concrete mixed according to specifications. The claimed liability would seem to rest solely upon breach of a duty to warn as

to the chemical properties of the cement, which made it potentially dangerous in that, when mixed in the wet concrete, it was capable of causing burns to the skin upon prolonged exposure.

For present purposes we may assume, without deciding, that an action for negligence will lie against the supplier of a commodity, for failure to warn of a latent danger attendant upon a proper use of the commodity supplied, at least where injury is foreseeable and probable. We have found no Maryland case directly in point, but compare *Kaplan v. Stein*, 198 Md. 414; *Otis Elevator Co. v. Embert*, 198 Md. 585, 598; and *Babylon v. Scruton*, 215 Md. 299, 305. See also *Clark v. Army and Navy Co-operative Society*, [1903] 1 K.B. 155; *McClanahan v. California Spray-Chemical Corp.*, 75 S. E. 2d 712 (Va.); *Cleary v. John M. Maris Co.*, 19 N.Y.S.2d 38; *Hopkins v. E. I. DuPont De Nemours & Co.*, 212 F.2d 623 (C.A., 3d Cir.); 2 Restatement, *Torts*, § 388, and comments *g* and *i*; note 86 A.L.R. 947; Dillard & Hart, *Product Liability: Directions For Use And The Duty To Warn*, 41 Va. L. Rev. 145; Prosser, *Torts* (2d Ed.), pp. 491, 503; 2 Harper & James, *Torts*, § 28.3."

The Court said further, at 204:

"The authorities cited indicate that the test is one of reasonableness under the circumstances; that a supplier is under a duty to make his product reasonably safe for its intended use with ordinary care; but a duty to warn of inherent dangers only arises where there is a reasonable probability of injury unless warning is given. Most of the cases in which liability has been found are cases where there was a serious defect in the commodity supplied, or where the commodity was so new that its dangerous properties could not reasonably be known or ascertained by the user. Concrete is certainly not a new product, since it has been in

common use in every kind of construction project for at least fifty years. Moreover, it is perfectly safe to use, if normal precautions are taken against prolonged application to sensitive portions of the skin. The caustic properties of lime, and lime products, have been known for centuries. In considering the extent of the duty to warn, it may be noted that ready-mixed concrete is customarily sold to builders who are thoroughly familiar with its properties, not to a casual user without prior experience. Thus, warnings in most cases would only dilate upon the obvious. We think it would be as unreasonable to require every supplier of concrete to warn of its caustic properties, as to require an electric company to warn of the danger of touching uninsulated wires. If the danger is not patent, it is at least in the realm of common knowledge which the supplier may properly take for granted. Cf. Le Vonas v. Acme Paper Board Co., 184 Md. 16, 21."

Section 388 of the Restatement, Torts, was again held applicable in Twombley v. Fuller Brush Co., 221 Md. 476, 158 A. 2d 110 (1960), where a judgment entered upon a directed verdict for the manufacturer of a spot remover was reversed. The fluid contained a chemical which in its usual liquid state offered relatively little danger, but was much more dangerous if inhaled in the form of mist. The product which appeared to have caused the plaintiff's toxic hepatitis was newly marketed in an aerosol spray can which expelled the contents in a mist, or cloud of droplets. The Court said, at 492:

"The use of tetrachloroethylene under pressure as a spray cleaner appears to be something new. Since its possible toxic effects were known, we think that the defendant either was chargeable with notice of its possibly much more dangerous character when used in a spray, or was at least under a duty to make adequate tests before putting it on sale to the public."

and said further, at 494:

> "Whether or not the defendant knew or ought to have known that its spot remover was likely to be dangerous when put to its intended use *(Babylon v. Scruton,* 215 Md. 299, 305, 138 A. 2d 375) and whether or not the warning of danger was adequate *(cf. Morgenstern v. Sheer,* 145 Md. 208, 220, 125 A. 790) were issues which should have been submitted to the jury."

Sec. 395, Restatement, *Torts,* 2d says:

> "§ 395. Negligent    Manufacture    of    Chattel Dangerous Unless Carefully Made
>
> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied."

Comment j. under § 395 discusses unforeseeable use or manner of use, and is just as appropriate to a product carefully made as it is to a product carelessly made. The comment says:

> "The liability stated in this Section is limited to persons who are endangered and the risks which are created in the course of uses of the chattel which    the    manufacturer    should    reasonably anticipate. In the absence of special reason to expect otherwise, the maker is entitled to assume that his product will be put to a normal use, for which the product is intended or appropriate; and he is not subject to liability when it is safe for all such uses, and harm results only because it is mishandled in a way which he has no reason to

expect, or is used in some unusual and unforeseeable manner. Thus a shoemaker is not liable to an obstinate lady who suffers harm because she insists on wearing a size too small for her, and the manufacturer of a bottle of cleaning fluid is not liable when the purchaser splashes it into his eye."

Also appropriate is Comment k. which says:

*"Foreseeable uses and risks.* The manufacturer may, however, reasonably anticipate other uses than the one for which the chattel is primarily intended. The maker of a chair, for example, may reasonably expect that some one will stand on it; and the maker of an inflammable cocktail robe may expect that it will be worn in the kitchen in close proximity to a fire. Likewise the manufacturer may know, or may be under a duty to discover, that some possible users of the product are especially susceptible to harm from it, if it contains an ingredient to which any substantial percentage of the population are allergic or otherwise sensitive, and he fails to take reasonable precautions, by giving warning or otherwise, against harm to such persons."

It is not seriously contended that Faberge marketed its Tigress Cologne with the intention that it be used by the buying public to scent burning candles by pouring the cologne on them. However, the duty of a manufacturer to warn of a danger, latent and not in the realm of common knowledge but inherent in a use of its product, extends beyond uses intended by the manufacturer, and includes uses reasonably foreseeable by it.

Thus we reach the question upon which this case turns. Appellants in their brief say that Judge Couch's decision to grant the judgment n.o.v. rested on his opinion that perfuming a lit candle was not an intended or foreseeable use of cologne. They assert that such a decision invaded the province of the jury in that the question of whether perfum-

ing a candle with cologne is an intended or ordinary use is a question of fact to be decided by the trier of fact, the jury.

In support of this position appellants cite *Singer v. Walker*, 331 N.Y.S.2d 823 (1972). In that case the Appellate Division, First Department, affirmed a judgment against the manufacturer of a geologist's hammer in favor of a boy who lost an eye when a chip of metal fragmented from the head of the hammer and lodged in his eye. The boy and his father had gone on an outing to collect rock specimens. They found a large quartz rock, and the father struck it with the hammer to open it to look for topaz. The manufacturer contended that this was a misuse of the hammer, and there was expert and other testimony both ways concerning the proper use of the hammer.

The court said, at 827:

> "We first consider the question of whether the testimony established that Frederick Singer misused the hammer at the time of the accident. The law is clear that a manufacturer need not anticipate that his product will be misused (Campo v. Scofield, 301 N. Y. 468, 95 N. E. 2d 802). We do not believe that it was established as a matter of law that the hammer was being misused. The Court charged that 'the testimony on the manner of what is or is not the proper use of a geologist's hammer . . . is a question of fact.' With this we fully agree."

\* \* \*

> "In any event, as indicated above, we believe that a question of fact was raised concerning the proper use of the hammer."

Also relied upon by appellants is *Hardman v. Helene Curtis Industries, Inc.*, 48 Ill. App. 2d 42, 198 N.E.2d 681 (1964). Trial in the lower court had resulted in a verdict and judgment for the manufacturer on two negligence counts, after the trial court had struck two counts for breach of implied warranty and two counts for breach of express

warranty. The Illinois court reversed the striking of the implied warranty counts, but affirmed as to the rest of the case. It said, at 691:

> "The essential question presented by a claim of breach of implied warranty of merchantability is whether the product failed to safely and adequately satisfy the uses to which such products are ordinarily put. The question of what is an ordinary use, however, is clearly one of fact."

* * *

> "One of our problems on the facts before us, therefore, is whether we can say, as a matter of law, that the use of the Lanolin Discovery in a manner not contemplated by the manufacturer, to wit, use by a small child of a product designed as a hair conditioner in quantities greatly in excess of those recommended by the manufacturer, on her dress as well as her hair, simply because she liked to smell the perfume it contained, constitutes so abnormal and unanticipated a use as to place it without the protection of the implied warranty of merchantability."

After commenting that what is an ordinary use (in breach of warranty cases) is as much a question of fact as what is a foreseeable use (in negligence cases) the court went on to say, at 691-92:

> "We believe there was sufficient evidence to warrant presentation of this question to the jury if there was also evidence that Lanolin Discovery was flammable.
>
> As to this, we believe that there was testimony which, when taken in the light most favorable to the plaintiff, tended to establish that the product was flammable. Therefore, despite whatever may have been the weight of contrary evidence, this issue of implied warranty should have been presented to the jury."

In both *Singer* and *Hardman* the courts said, to be sure, that what is an ordinary use, or a proper use, or a foreseeable use, is a question of fact. But inherent in that statement of the law is the predicate that there is evidence on the question which requires the jury to exercise its fact finding function. In each case the court referred to the conflicting evidence on the question.

Appellants also cite an opinion of a U. S. District Judge denying a motion for a judgment n.o.v. in *Colosimo v. May Dept. Store Co.*, 325 F. Supp. 609 (W.D. Pa. 1971), after a jury verdict in favor of a boy who was injured when he dived into a shallow swimming pool. There the court said, at 612:

> "It appears, therefore, that a proper test to be applied in determining the matter of 'abnormal use' is the reasonable foreseeability on the part of a manufacturer of the use to which his product would be put. Both 'reasonableness' and 'foreseeability', where reasonable minds may differ, are typical jury questions. Whether or not John Colosimo's unfortunate dive amounted to an abnormal use of the pool was an issue upon which reasonable men could very well differ, and, hence, required determination by the jury."

Although the opinion does not discuss the evidence on whether the use of the pool was abnormal, we must assume that there was evidence to support the jury's verdict.

In the present case appellant argues that "the determination of what constitutes an intended or ordinary use should be left to the common sense determination of a jury utilizing their common sense judgment and everyday experience." Such an approach would require the abrogation of the rule that juries must decide issues on the evidence before them, and when there is no evidence, juries will not be permitted to speculate, or to infer the existence of facts from mere possibilities. *Pinchbeck v. Baltimore Tank Lines*, 258 Md. 211, 265 A. 2d 238 (1970).

There was a total absence of any evidence in this case which would tend to show or would support a rational

562

inference that Faberge foresaw or should have foreseen that its cologne would be used in the manner which caused the injuries to Nancy Moran. Since Faberge did not foresee the use, it had no duty to warn against it.

Judge Couch correctly entered judgment for Faberge notwithstanding the verdict.

*Motion to dismiss denied.*
*Judgments affirmed.*
*Appellants to pay costs.*