208 So.2d 615 (1968)
Benjamin TOOMBS, Reginald Toombs, a Minor, by His Father and Next Friend, Benjamin Toombs; Emmitt Toombs, a Minor, by His Father and Next Friend, Benjamin Toombs; Sally M. Toombs, Eloise Crutchfield; and Gary Carrithers, a Minor, by His Mother and Next Friend, Eloise Crutchfield, Petitioners,
v.
FORT PIERCE GAS COMPANY, a Florida Corporation, Respondent.
No. 36280.
Supreme Court of Florida.
March 27, 1968.
Rupert Jasen Smith and Angus Sumner, Fort Pierce, for petitioners.
Thomas A. Hoadley, of Howell, Kirby, Montgomery, Sands & D'Aiuto, West Palm Beach, for respondent.
ROBERTS, Justice.
By conflict certiorari we here review a decision of the District Court of Appeal, Fourth District, reversing judgments in favor of petitioners for injuries sustained when a propane gas storage tank owned by respondent exploded at the rear of a twofamily residence, resulting in the death of a child, personal injuries to others, and in property damage. The tank had been manufactured seven years before by the Maddox Foundry and Machine Works, Inc. but was owned by the Fort Pierce Gas Company. It had been in use by the Toombs family for about six years for the storage of gas sold by the gas company to Toombs, who lived in one apartment. Petitioners Crutchfield and Carrithers lived in the other apartment of the duplex dwelling. The jury returned verdicts for petitioners against the gas company. The District Court of Appeal reversed the judgments, its opinion appearing at 193 So.2d 669.
On December 17th, 1962 at approximately 1:45 p.m. in Fort Pierce, Florida, a 50-gallon liquified propane gas tank exploded *616 and caught fire, killing George Christopher Toombs, aged 3, and injuring Reginald, Emmitt and Sally Toombs; also injuring Eloise Crutchfield and Gary Carrithers.
Around 8 a.m. on the same day one Lonnie James, an employee of the gas company, went to the duplex residence to fill the gas tank which was owned by the gas company and used in the sale of gas to its customers. Petitioners contend that the gas tank was overfilled by putting 47.7 gallons of liquid gas in a tank which was limited to 40 gallons. The tank was located at the rear or south side of the building and in an exposed area where the sun's rays shone directly on it. As above stated, shortly after noon that day the tank exploded.
Petitioners brought a suit against the gas company charging negligence in the overfilling of the tank or failure to properly train the deliveryman for such work or negligently failing to hire proper and efficient help to fill the tank; and further contended that they were entitled to recovery under the doctrine of res ipsa loquitur; that the manufacturer, Maddox Foundry and Machine Works, Inc., had negligently constructed the tank; and alternatively alleged that the gas company and Maddox impliedly warranted the safety of the tank.
After the explosion the remains of the tank were referred for examination to Professor O.M. Harrelson of Georgia Tech University, and one Grover Dunn, an engineer in Atlanta. Professor Harrelson testified it was his opinion that putting 47.7 gallons of propane gas in a tank limited to a 40-gallon capacity was what caused the tank to explode. Witness Dunn testified it was his view that insufficiency of the welds to hold the pressure caused the tank explosion. The jury apparently elected to accept the testimony of Professor Harrelson, returning verdicts against the gas company but exonerating Maddox.
For some reason unknown to us, the District Court of Appeal did not deal with the validity of the verdicts and judgments on the theory of negligence, but dealt solely with the question of implied warranty. In so reviewing, the District Court divided the persons into two categories  (1) members of the Toombs family, and (2) mere bystanders without claim of privity or relationship with petitioners. In reversing the case the District Court said:
"The properties of propane gas are such that it may be liquified [sic] by placing it under pressure. It is usually handled and distributed as a liquid in a tank under pressure. Its storage tanks, therefore, must possess sufficient strength to withstand this pressure. Also, a rise in temperature will cause the liquified [sic] gas to expand in volume. All tanks on this account should always be only partially filled so as to leave room for expansion to accommodate possible temperature changes.
"Two distinct causative factual concepts were urged and defended before the jury. One assault was that the Owner [gas company] was guilty of negligence by overfilling the tank a few hours prior to the explosion. The other advanced was that the tank was defectively manufactured and subject to rupture by reason of improper welds.
"Considering first the award of damages in favor of plaintiffs and against the Owner [gas company], the point is made by the Owner that reversible error was committed in presenting the case to the jury on the theory of implied warranty because that doctrine was not available to these plaintiffs. Because our consideration of this question and ultimate decision requires the reversal of this part of the case, the other points raised by the Owner [gas company] need not be answered." (Brackets and italics supplied.)
*617 The District Court then reasoned that bystanders Crutchfield and Carrithers could not recover and said:
"Are the bystander plaintiffs entitled to the benefit of the implied warranty doctrine in their claim against the Owner [gas company]? No, they are not. The courts of our state have developed the position that, in order for a claimant to cross the threshold, regardless of other refinements and requirements, the injured bystander would have to have been a user of the product at the time. Rodriguez v. Shell's City, Inc., Fla.App. 1962, 141 So.2d 590. Here these bystanders were not users and neither were they in privity. Their remedy is in an action for negligence and not warranty. Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390." (Brackets and italics supplied.)
The District Court's reversal of the judgment for petitioners in this action, founded on both negligence and warranty, rests first upon its decision that "regardless of other refinements and requirements" of the implied warranty doctrine, petitioners may not claim such remedy unless they are (1) users of the products involved or (2) in privity with the respondent gas company. We conclude that the decision on this point of law, upon the record before the court, is in conflict with the express acknowledgment of the "dangerous instrumentality exception to the privity requirement" in earlier cases. The manufacturer of a lawn chair that had moving parts which amputated a prospective customer's finger was held liable to the third party on implied warranty in Matthews v. Lawnlite Company (Fla. 1956), 88 So.2d 299. The chair as constructed was held to conceal a "dangerous device" and as an exception to the privity rule, recovery was allowed, and the court there followed cases which "reveal a more humane or reasonable trend of decisions in the disposition of such cases." In McBurnette v. Playground Equipment Corp. (Fla. 1962), 137 So.2d 563, a minor son of a purchaser was allowed recovery for a defective "sky-rider", the court holding "The decision here is simply that an implied warranty may run initially to one in the position of the minor plaintiff." In case sub judice petitioners Crutchfield and Carrithers, as occupants of the other apartment of the duplex, were necessarily in the vicinity of the hazards presented by the use of the dangerous commodity, butane gas, in the adjoining living quarters. See Farber v. Houston Corp. (Fla.App. 1963), 150 So.2d 732, and Moebus v. Smith (Fla.App. 1966), 193 So.2d 34. Their position, much like that of the minor in McBurnette v. Playground Equipment Corp., supra, although not in the same context, appears to require the presumption that they "stand[s] in the shoes of the purchaser in enforcing the warranty." See also Carter v. Hector Supply Co. (Fla. 1961), 128 So.2d 390; Moebus v. Smith, supra; Farber v. Houston Corp., supra; Vandercook and Son, Inc. v. Thorpe, 5 Cir., 344 F.2d 930. Neither do the principles stated in the Carter opinion support the novel premise that the warranty remedy, irrespective of privity, is limited to users. See modification of Carter in McBurnette, supra, 137 So.2d p. 565 para. [1, 2]. Rodriguez v. Shell's City, Inc. (Fla.App. 1962), 141 So.2d 590; Engel v. Lawyer's Co-op. Pub. Co. (Fla.App. 1967), 198 So.2d 93. The inherently dangerous instrumentality qualification of the privity requirement in warranty, when applicable, has instead been regarded as extending liability to those persons one "should expect to use the chattel lawfully or to be in the vicinity of its probable use." 28 Fla.Jur. 522.
The distinction made by the appellate court between liabilities in bailment and sale is in our opinion wholly inapplicable to the facts in question, involving the sale of a commodity in container subject to bailment provisions. The pleadings and proof in this case adequately presented the claim of product suitability and safety in the sale and handling of a dangerous commodity, and we think this issue as well as that of reasonable care by the respondent company was properly presented to the *618 jury by the trial court in behalf of the several petitioners.
Accordingly, the decision of the District Court of Appeal is quashed and the cause remanded for review on such other undisposed of questions as may remain in that court, and for disposition in accordance with this opinion.
It is so ordered.
THOMAS, ERVIN and ADAMS, JJ., concur.
DREW, J., concurs specially with Opinion.
THORNAL, J., dissents with Opinion.
CALDWELL, C.J., dissents and concurs with THORNAL, J.
DREW, Justice (concurring specially):
I agree that the petition should be granted on the ground of conflict[1] created by the decision of the appellate court, on authority of Carter v. Hector Supply Co.,[2] that the "bystander plaintiffs" had no implied warranty remedy because they were not users of the gas which exploded, nor in privity with the defendant supplier. Upon the record facts before the court, the opinion clearly attributed to the Carter case controlling effect in a situation which this Court in the cited opinion expressly excluded from its ruling that lack of privity precludes relief in warranty:
"To avoid any suspicion that we have overlooked the point, we mention that in our opinion the commodity involved in the instant case could not be classified under any possible dangerous instrumentality exception to the privity requirement * * *."[3]
For the obvious reason that the present case involves an inherently dangerous commodity which, like food products, constitutes a well-defined exception to the privity doctrine, I conclude that the appellate court erred in excluding the warranty remedy. The obligation of distributors to supply this class of products in a condition fit for intended use is not restricted to parties with whom they do business.[4] The complaint and evidence in my opinion clearly presented an issue as to breach of the fitness warranty by distribution of gas in unsafe condition sufficient to sustain the verdict and judgment rendered in the trial court. Bailment or control of the storage container could not alter responsibility for the condition, including excessive pressure, of the gas at the time of its sale or distribution.
In sum, I find no precedent for the proposition that these plaintiffs must be limited to a negligence action, and would also reject the novel principle that the warranty remedy extends only to those using the product in question,[5] and remand the cause for disposition accordingly.
THORNAL, Justice (dissenting).
I respectfully dissent because, in my view, the majority opinion embraces the doctrine of strict or absolute liability, which I feel is unjustifiable under the circumstances here presented.
By the allegations of the complaint the plaintiff sought to impose upon the Gas Company the absolute duty of an insurer of the safety of the gas tank. The District Court imposed a so-called "lesser warranty". It held that the Gas Company *619 warranted that it had "exercised reasonable care to ascertain that the tank was safe and suitable for the storage of propane gas". Fort Pierce Gas Company v. Toombs, 193 So.2d 669 (4th D.C.A. Fla. 1967). The majority now imposes the absolute liability rule as requested by the complaint. All the while the manufacturer of the tank has been exonerated from blame by verdict of the jury.
I think that the District Court correctly disposed of the matter in sending the case back for a new trial.
I therefore dissent.
CALDWELL, C.J., concurs.
NOTES
[1] Pinkerton-Hays Lmbr. Co. v. Pope, Fla. 1961, 127 So.2d 441.
[2] Fla. 1961, 128 So.2d 390.
[3] Ibid, p. 392.
[4] Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299; Tampa Drug Co. v. Wait, Fla. 1958, 103 So.2d 603, 75 A.L.R.2d 765. Anno. 75 A.L.R.2d 39.
[5] Rodriguez v. Shell's City, Inc., Fla.App. 1962, 141 So.2d 590.