291 So.2d 58 (1974)
Bethany Ann KELLER, by and through Her Natural Parent and Next Friend, Virginia F. Compton, and Virginia F. Compton, Appellants,
v.
EAGLE ARMY-NAVY DEPARTMENT STORES, INC., a Florida Corporation, Appellee.
No. 73-156.
District Court of Appeal of Florida, Fourth District.
March 8, 1974.
*59 J. Luther Drew, West Palm Beach, for appellants.
Edna L. Caruso of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, West Palm Beach, for appellee.
FERRIS, JOHN G., Associate Judge.
The plaintiff in this case is a minor who alleges serious injuries as a result of burns sustained from the explosion and resulting flame of a "Glo-Lite", which is a torch and a mosquito repellent device. The Complaint alleges, and the proofs show, in the light most favorable to plaintiffs, that the "Glo-Lite" was purchased by one Bernice Law from the defendant retail establishment and that on a subsequent picnic trip, the minor plaintiff joined the Law family and was a part of the family group on this picnic and camping trip. The proofs further indicate that the "Glo-Lite" torch was lit and was operating for approximately one-half hour when a member of the Law family raised the torch and inclined it slightly, at which time the torch exploded and the resulting flame from the torch reached the minor plaintiff and caused the severe burns complained of. It was further alleged and proven that the torch had been lit in accordance with the instructions contained thereon and had been handled in a manner consistent with its intended use. The plaintiff filed her claim in four counts against the defendant, who is the retailer of the product complained of. The first count alleges a breach of an implied warranty of fitness of the torch and alleges the torch to be a dangerous instrumentality. The third count alleges the same matter but states the derivative claim of the mother. Count two alleges that the defendant was negligent in failing to properly warn the plaintiff of the dangerous instrumentality contained therein or properly label the container, and count four again tracks count two as it pertains to the derivative claim of the mother.
All four counts, therefore, are bottomed upon the premise that the torch involved was in fact a dangerous instrumentality and that recovery should be had by the plaintiff on both the breach of an implied warranty of fitness and upon negligent construction and labeling, even though the plaintiff was not the original purchaser of this product from the defendant, who was the retailer and not manufacturer of the instrumentality in question.
In its first appearance this court reversed the trial judge, who dismissed the four count Complaint filed by the plaintiff, and in so doing we said:
"... we feel from our review of the cases and criteria contained therein that the complaint was at least adequate at this stage to state a cause of action in breach of warranty. The action was brought against a retailer by an injured person not in privity, based upon the notion that the injury was caused by a dangerous instrumentality.
We specifically do not here determine whether or not the exploding patio torch in question was a dangerous instrumentality. We only hold that the trial court decision as to this concern was premature and that such determination, at least in this uncertain instance should be made only after plaintiff has had an opportunity to adduce evidence as to the construction and dangers of this particular device." (emphasis supplied)
Upon a Motion for Clarification, this court further amplified the above holding by finding that the Complaint stated a cause of action in each of the four counts. Keller et al. v. Eagle Army-Navy Department Stores, Inc. (Fla.App.) 256 So.2d 248.
At the trial, the plaintiff and the members of the Law family testified as to the *60 happening of this unfortunate accident. The plaintiff also produced as a witness a chemical engineer who testified at some length on the construction of the torch in question and of his chemical analysis of the contents of said torch. It was his expert opinion that the can was improperly constructed and because of the make-up of the volatile liquids in the can and the manner in which the torch was used in this case, there was instantaneous ignition of the contents which he likened to the "explosion of a bullet in a chamber." He further testified that there was no way to avoid this accident because of the vaporization that had occurred and he attributed both conditions to the improper design and negligent construction of the torch and the eventual gaseous state that resulted.
After all of the testimony of the plaintiff had been presented, the trial judge directed a verdict in favor of the defendant on all four counts.
The question then presented for our consideration is whether or not the plaintiff "adduc[ed] evidence as to the construction and dangers of this particular device", Keller v. Eagle Army-Navy, Supra, so as to preclude the entry of a directed verdict for the defendant.
Florida has long recognized that certain instrumentalities are "dangerous instrumentalities" per se, such as an automobile driven on the highways (Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629), an airplane in operation, (Shattuck v. Mullen, Fla.App. 1959, 115 So.2d 597), an operated motorcycle, (Western Union Telegraph Co. v. Michel, 1935, 120 Fla. 511, 163 So. 86) and all boats (Sec. 371.52, F.S.A.), and strict liability has been imposed upon the owners thereof for their improper use. The Supreme Court has also recognized that certain items may be dangerous instrumentalities in fact.
In Matthews v. Lawn Lite Co., (Fla. 1956) 88 So.2d 299, the Florida Supreme Court had under consideration a claim against a manufacturer of lawn chairs by a plaintiff who sustained a partial amputation of a finger when he sat in a display chair shown by a retailer. Relying on the Restatement of the Law of Torts, Sec. 398, Vol. 2, the Supreme Court said:
"An implied warranty does not protect against hazards apparent to the plaintiff; it protects against an usual or apparent use. It does not protect against injury imposed while carelessly using a dangerous mechanism. A lounge chair is not a dangerous instrumentality. Dangerous instrumentalities have been defined as those which by nature are reasonably certain to place life and limb in peril when negligently constructed, (emphasis supplied) such as airplanes, automobiles, guns and the like.
The chair in question is a rocking chair with moving parts; it rocks back and forth. It was constructed of aluminum and was used for rest and recreation; it looks harmless, every aspect of it suggested ease and comfort. There was no notice of any kind that beneath its restful armrest there were moving metal parts so constructed that they would amputate the occupant's fingers with the ease that one clips a choice flower with pruning shears. It was designed, constructed and delivered to the public with these moving parts that were essential to its use. They were completely concealed from the user and as essential parts of the chair were inherently dangerous. No one would suspect that such a dangerous device would be concealed in such an innocent looking instrumentality."
Thus, negligent construction or design of an article which is not a dangerous instrumentality per se can subject the manufacturer to liability if a user sustains an injury as a result of an inherently dangerous condition in an otherwise innocent looking instrumentality. Obviously, whether such an article is or is not a dangerous instrumentality will be a question of fact in each instance, to be resolved by the trier of *61 fact, after competent admissible evidence is adduced and under proper instructions by the court.
Since the user of a dangerous instrumentality in fact sustaining injury acquires a cause of action against the manufacturer, it seems entirely reasonable to allow recovery against the seller of such an article under the same circumstances and conditions. Appellee admits that such recovery (against the seller) has long been allowed in Florida where the product involved was food or cosmetics, e.g., Smith v. Burdine's, Inc. Fla. (1940), 144 Fla. 500, 198 So. 223, but it argues that such rule should not be extended to the torch in question here.
Since the seller, by marketing the potentially dangerous product for use and consumption and by inducement and promotion encourages the use of these products he sells, he undertakes a certain and special responsibility towards the consuming public who may be injured by it. Reputable sellers should stand behind the products they sell and the burden of accidental injuries caused by potentially dangerous articles should be placed upon those who market them.
Restatement of the Law of Torts, Section 402A, Vol. 2, Page 347, concisely states the correct rule of law applicable to this case:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
See also the extensive comments following this rule.
We hold, therefore, that the plaintiff in this case adduced sufficient evidence, which taken in the light most favorable to the plaintiff, tending to show that the torch in question was improperly and dangerously designed and constructed and that the minor plaintiff, a "user" in contemplation of the rule above, sustained physical injuries as a result thereof.
Accordingly, the judgment of the trial court based on a directed verdict for defendant is reversed and the cause remanded to the trial court for a new trial.
Reversed and remanded.
WALDEN and MAGER, JJ., concur.