311 So.2d 417 (1974)
Louise C. MATTES and Herman Mattes, Jr., Appellants,
v.
COCA COLA BOTTLING CO. OF MIAMI, and Food Fair Stores, Inc., Appellees.
No. 73-295.
District Court of Appeal of Florida, Fourth District.
May 24, 1974.
Rehearing Denied October 31, 1974.
*418 William E. Blyler of Patterson Maloney & Shankweiler, Coral Springs, for appellants.
James A. Smith of Wicker Smith Pyszka Blomqvist & Davant, Miami, for appellee Coca Cola Bottling Co. of Miami.
PER CURIAM.
From a careful consideration of the record and from a review of the authorities cited in the briefs and oral argument of the parties we are of the opinion that plaintiff failed to demonstrate reversible error with respect to the trial court's granting of defendant's motion to strike plaintiff's allegation and claim under the theory of implied warranty. The record reflects the absence of testimony as to which bottle actually caused the injury to the plaintiff, i.e., the broken bottle was never identified as a "coke" bottle. Moreover, the evidence was lacking in its failure to show that plaintiff's injury was caused by a defective coke bottle; or that the coke bottle was a dangerous instrumentality so as to enable the plaintiff, who was a bystander (not a purchaser or user), to overcome the privity requirement in warranty. See Keller v. Eagle Army-Navy Department Stores, Inc., Fourth District Court of Appeal, 291 So.2d 58, opinion filed March 8, 1974; Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299; Toombs v. Fort Pierce Gas Company, Fla. 1968, 208 So.2d 615; Reese v. Florida Coca-Cola Bottling Company, Fla.App. 1972, 256 So.2d 392; Royal v. Black and Decker Manufacturing Company, Fla.App. 1967, 205 So.2d 307.
Affirmed.
WALDEN, MAGER and DOWNEY, JJ., concur.

ON PETITION FOR REHEARING
PER CURIAM.
Upon consideration of the appellants' petition for rehearing filed on June 10, 1974 directed to the opinion of this court dated May 24, 1974, this court is of the view that the petition for rehearing should be denied.
WALDEN and DOWNEY, JJ., concur.
MAGER, J., would grant rehearing.
MAGER, Judge (dissenting from denial of the rehearing).
With all due respect to my colleagues I would grant the appellants' petition for rehearing and withdraw the opinion of this court for the reasons hereinafter set forth.
The plaintiffs, Louise C. Mattes and Herman Mattes, Jr., appellants and petitioners herein, filed a complaint below seeking damages for injuries sustained by Mrs. Mattes allegedly as a result of an exploding Coca Cola bottle. The complaint alleged and evidence at trial reflected that Mrs. Mattes was shopping in the store of the defendant, Food Fair; she had gone to the Coca Cola display; removed a carton of Coca Cola from the top shelf; turned and walked a few steps away when she suddenly heard a "bang"  "like a very large loud firecracker" followed by the sound of bottles falling and breaking; was wet "from head to toes"; and felt pain in both her legs which were bleeding. Mrs. Mattes stated that when she looked around she saw glass "and Coca Cola all over the floor".
The allegations of the complaint and the evidence before the trial court reflected that Mrs. Mattes never actually saw the bottles of coke either exploding or breaking. It was only after Mrs. Mattes took a 6-pack of coke from the coke display turned and walked some four or five feet that the incident took place causing Mrs. Mattes to suffer injuries. The 6-pack which Mrs. Mattes had removed from the display remained intact. The evidence at trial further reflected that it was the custom of the driver of the Coca Cola truck to bring the merchandise in the store and have it stacked; that no Food Fair employee was involved in the stacking process; *419 and that the temperature in the store at the time of the accident was a compfortable 70 to 72°.
Plaintiffs' complaint against Coca Cola and Food Fair was predicated upon the separate and concurrent negligence of both defendants and in the alternative upon breach of implied warranty. The allegation of negligence was to the effect that defendant Coca Cola was negligent and careless in the bottling, manufacturing and handling of the product and that Food Fair was negligent in the storage, display and handling of the said product. The allegation pertaining to the implied warranty was to the effect that Coca Cola and Food Fair impliedly warranted to the public that the cartons of coke were sound and safe to use in the store and that the defendants "did breach said warranty in that said bottles were not safe and were not fit for the use which the bottle and its contents were being sold and as a result thereof plaintiff was injured when said carton of coke bottles exploded as aforesaid".
At the conclusion of all the testimony and evidence the trial court directed a verdict in favor of Food Fair Stores;[1] Coca Cola also moved to "dismiss" the claim of the plaintiffs (in effect plaintiff was requesting the issuance of a directed verdict). The court denied plaintiffs' motion to "direct a verdict" on the question of negligence; the court granted the motion as to claim predicated upon implied warranty thereby striking it from the plaintiffs' complaint as hereinafter indicated:
"THE COURT: I am going to deny the motion to direct on the question of negligence. On the question of implied warranty I am going to grant the motion. I will not submit that to the Jury."
The case ultimately went to the jury only on the issue of the negligence of Coca Cola; the jury returned a verdict in favor of Coca Cola and the trial court denied plaintiffs' motion for new trial.
In this appeal plaintiff alleged that it was error for the trial court to have stricken or directed a verdict on plaintiffs' claim predicated upon the theory of implied warranty.
Products liability cases in Florida have been fraught with and mired down in judicially created exceptions. Each fact situation oftentimes gave rise to "new law" in the area of implied warranty. Apart from the traditional avenues available to one seeking recovery for injuries suffered in a products liability case (i.e., express warranty, tort action based on negligence), liability of a manufacturer or seller has been found to exist because of an implied warranty  a warranty of merchantability of goods fit for ordinary purposes and fit for a particular purpose. A failure to meet the obligations of merchantability or fitness constituted a breach of implied warranty and permitted recovery for injuries suffered by the consumer or user of the defective product. The implied warranty method of recovery was based upon the theory of contract heavily dosed with the law of sales and uniform commercial code. This is quite evident from the genesis of the implied warranty theory. Since the landmark decision in the case of Winterbottom v. Wright, 10 M & W 109, 152 Eng.Rpt. 402 (1842), no action could arise from the failure of the contracting party (manufacturer) to perform a contract properly unless the injured third party (plaintiff) was in privity with the defendant. Royal v. Black and Decker Manufacturing Company, Fla.App. 1967, 205 So.2d 307. Actions by third parties in both contract and tort were barred by the requirement for and necessity of privity.
Recognizing that the ritualistic adherence to privity of contract did not comport with the "right, justice and welfare of the general purchasing and consuming public" the Supreme Court of Florida in Blanton v. Cudahy Packing Co., 1944, 154 Fla. 872, 19 So.2d 313, permitted an ultimate consumer *420 to recover against a food manufacturer despite the absence of privity. This marked the beginning of the judicial course of court created exceptions to the contractually oriented concept of privity  a concept that the courts apparently recognized had little relevancy to products liability cases. The court relaxed and in effect eliminated the requirement of privity where a food product was concerned. In so holding, the Supreme Court of Florida observed, at p. 316:
"... The rationale of the implied warranty theory of liability is in effect that the right of recovery by injured consumers ought not to depend upon or turn on the intricacies of the law of sale nor upon the privity of contract, but should rest on right, justice and welfare of the general purchasing and consuming public."
See also Renninger v. Foremost Dairies, Inc., Fla.App. 1965, 171 So.2d 602; Canada Dry Bottling Company of Florida v. Shaw, Fla.App. 1960, 118 So.2d 840; Gay v. Kelly, Fla.App. 1967, 200 So.2d 568; Reese v. Florida Coca-Cola Bottling Company, Fla. App. 1972, 256 So.2d 392; Schuessler v. Coca-Cola Bottling Company of Miami, Fla.App. 1973, 279 So.2d 901; cf. Cliett v. Lauderdale Biltmore Corporation, Fla. 1949, 39 So.2d 476;
Recognizing that the cases in other jurisdictions revealed "a more humane or reasonable trend of decisions" in the disposition of cases involving the privity requirement, the Supreme Court made further inroads by eliminating privity where the product involved was dangerous or an inherently dangerous instrumentality.[2] Matthews v. Lawnlite Company, Fla. 1956, 88 So.2d 299; McBurnette v. Playground Equipment Corp., Fla. 1962, 137 So.2d 563; Toombs v. Fort Pierce Gas Company, Fla. 1968, 208 So.2d 615. As a consequence there developed two of the most well recognized exceptions to the privity requirement, i.e., where the product was a foodstuff or a dangerous instrumentality.
One of the most farreaching decisions having the effect of virtually eliminating the necessity for privity was the case of Lily-Tulip Cup Corporation v. Bernstein, Fla. 1966, 181 So.2d 641. In Lily-Tulip, plaintiff, while a patient in a hospital was served a hot drink in a paper cup manufactured by the defendant company. The cup came apart causing the hot contents to spill on plaintiff resulting in scalding. Plaintiff's complaint sought damages against the manufacturer on theories of negligence and breach of implied warranty. The third district court reversed a summary judgment entered against plaintiff recognizing that "the law in Florida is well settled that a manufacturer will be held liable on an implied warranty without a privity to a consumer injured by a defective product manufactured for human consumption or other intimate bodily use". After reviewing the case law in Florida the court concluded that "privity no longer obtained in an implied warranty suit by a consumer against a manufacturer". The Supreme Court of Florida granted certiorari and approved the opinion of the district court in all respects. See also McCarthy v. Florida Ladder Company, 295 So.2d 707, Second District Court of Appeal Case No. 72-987 opinion filed June 14, 1974; Gay v. Kelly, supra.
No longer limiting the privity exception to certain categories of products, the courts have extended the exceptions to broader categories of persons. The courts have allowed recovery based upon implied warranty to be extended to the prospective *421 or potential customer (Matthews v. Lawnlite, supra, and McCarthy v. Florida Ladder Company, supra), members of the family of the purchaser or those who would be considered to be "a naturally intended and reasonably contemplated beneficiary of the warranty of fitness for use or merchantability" (McBurnette, supra), to employees of purchasers (Barfield v. Atlantic Coast Line Railroad Company, Fla.App. 1967, 197 So.2d 545), and even to bystanders (Toombs, supra). In Toombs the Supreme Court of Florida, although denominating the product (propane gas) as falling within the "dangerous instrumentality exception to the privity requirement" observed that "neither do the principles stated in the Carter opinion [Carter v. Hector Supply Co., Fla., 128 So.2d 390] support the novel premise that the warranty remedy, irrespective of privity, is limited to users". The court specifically concluded, at p. 617 of 208 So.2d:
"... The inherently dangerous instrumentality qualification of the privity requirement in warranty, when applicable, has instead been regarded as extending liability to those persons one `should expect use the chattel lawfully or to be in the vicinity of its probable use.' 28 Fla.Jur. 522."
Case after case has revealed the erosion of the citadel of privity to the point where the courts appear to be laboring under the fiction of implied (contractual) warranty. An analysis of these cases reveals that in actuality the courts have imposed an absolute or strict liability in tort upon the manufacturer for placing a product on the market knowing that it is to be used without inspection for defects and which proves to have a defect causing injury to a human being. In essence, these are the words of Justice Traynor in the landmark decision of Greenman v. Yuba Power Products, Inc., 1962, 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897, which crystallized the theory of strict liability. See also Restatement, 2d, Torts, sec. 402 A.
Applying the decisional law in this state to the case sub judice I conclude that plaintiffs may maintain a cause of action against defendant Coca Cola on the basis of implied warranty; and therefore it was error for the trial court to strike such claim. The plaintiffs' claim predicated on implied warranty should have been submitted to the jury. In Little v. Publix Supermarkets, Inc., Fla.App. 1970, 234 So.2d 132, 133, this court stated:
"The power to direct a verdict should be exercised with caution, and it should never be granted unless the evidence is of such a nature that under no view which the jury might lawfully take of it, favorable to the adverse party, could a verdict for the latter be upheld. The movant admits every reasonable inference that a jury might fairly and reasonably arrive at favorable to the adverse party. Burch v. Strange, Fla.App. 1961, 126 So.2d 898."
See also Mathis v. Lambert, Fla.App. 1973, 274 So.2d 601. The evidence was of such nature from which the jury could have inferred that the product which was alleged to have injured the plaintiff was in fact a Coca Cola bottle. Such inference would have been reasonable from the testimony of plaintiff, having immediately prior to the accident, removed a carton of Coca Cola from a display and having subsequent to the accident observed glass and coke all over the floor. Moreover, the evidence was sufficient for the purposes of withstanding a motion for directed verdict for the jury to have inferred that a coke bottle did "explode" and that such explosion could not have occurred unless the bottle was "defective". This is not to suggest that the evidence conclusively demonstrated that a coke bottle did in fact "explode" or that there was in fact a defect but merely that there was sufficient evidence upon which a jury could have made such a reasonable inference. Circumstantial evidence which is the core of the res ipsa loquitur doctrine would be sufficient to take *422 the case to the jury on the theory of implied warranty as well as on the theory of negligence. McCarthy v. Florida Ladder Company, supra; Reese v. Florida Coca-Cola Bottling Company, supra; Reinninger v. Foremost Dairies, Inc.; supra; Products Liability in Florida, p. 32, sec. 2.15, published by The Florida Bar Continuing Legal Education. In this regard it is interesting to note that the court refused to direct a verdict as to plaintiffs' claim founded upon negligence thereby suggesting the existence of the very same factual matters which the defendant urges were nonexistent with respect to the claim of implied warranty. This court has no way of knowing on what basis plaintiffs' claim predicated upon implied warranty was stricken. Whether the plaintiff being classified as a potential consumer or user under Matthews v. Lawnlite, supra, or a bystander under Toombs, supra, reading these cases in conjunction with Lily-Tulip Corp. v. Bernstein, supra, leads me to conclude that plaintiffs' claim upon implied warranty was properly founded and should have been submitted to the jury.
Although I would reverse on the basis of the law pertaining to implied warranty we would serve only to perpetuate the fiction and multiply the exception if we did not recognize the theory of strict liability in tort as a method of recovery in products liability cases to complement or supplant the "traditional warranty and negligence theories". See Royal v. Black and Decker Manufacturing Company, supra. The courts were talking in terms of "implied warranty" but were actually doing something else; because of the obstacles of implied warranty the courts were applying strict liability. The comments made by Dean Prosser are, indeed, pertinent:
"`What all of this adds up to is that "warranty," as a device for the justification of strict liability to the consumer, carries far too much luggage in the way of undesirable complications, and is leading us down a very thorny path. The courts which quote, in nearly every other case, the statement that "the remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales," have proceeded to entangle themselves in precisely those intracacies like Laocoon and his sons.
"`All this is pernicious and entirely unnecessary. No one doubts that, unless there is privity, liability to the consumer must be in tort and not in contract. There is no need to borrow a concept from the contract law of sales; and it is "only by some violent pounding and twisting" that "warranty" can be made to serve the purpose at all. Why talk of it? If there is to be strict liability in tort, let there be strict liability in tort, declared outright, without an illusory contract mask.'" W. Prosser, The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1133-34 (1960).
See Amundsen v. Ohio Brass Co., Nev. 1973, 513 P.2d 1234.
The strict liability in tort doctrine was formulated by Justice Traynor in Greenman v. Yuba Power Products, supra, 27 Cal. Rptr. at p. 700, 377 P.2d at p. 900, as hereinafter set out:
"... A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being...."
This doctrine has received approval in the second Restatement of Torts, sec. 402 A.[3] *423 Justification for the adoption of this concept is particularly set forth in the comments to sec. 402 A of the Restatement as follows:
"... the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products." (at pp. 349-350.)
In Codling v. Paglia, 1973, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 468, 298 N.E.2d 622, 627, the Court of Appeals of New York similarly observed:
"Today as never before the product in the hands of the consumer is often a most sophisticated and even mysterious article. Not only does it usually emerge as a sealed unit with an alluring exterior rather than as a visible assembly of component parts, but its functional validity and usefulness often depend on the application of electronic, chemical or hydraulic principles far beyond the ken of the average consumer. Advances in the technologies of materials, of processes, of operational means have put it almost entirely out of the reach of the consumer to comprehend why or how the article operates, and thus even farther out of his reach to detect when there may be a defect or a danger present in its design or manufacture. In today's world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. Once floated on the market, many articles in a very real practical sense defy detection of defect, except possibly in the hands of an expert after laborious and perhaps even destructive disassembly... ."
The recent trend has been towards the concept of strict liability in tort beginning with the Greenman decision, supra. This movement and trend has found acceptance in a significant number of states and has been recognized by numerous textwriters including Dean Prosser. See 25 U.M.L.R., supra, p. 263; 13 ALR3d 1057 et seq., Annotation: Products Liability: Strict Liability in Tort.[4]
The chief elements which a plaintiff must prove in a case involving strict liability in tort are: (1) the defective and unreasonably dangerous condition of the defendant's product including the defendant's connection with the product, and (2) a causal connection between such condition and the plaintiff's injuries or damages. See 13 ALR3d 1066-1075. Strict liability in tort is dependent neither upon privity nor upon negligence. At the heart of this theory (as with implied warranty) is the requirement that the plaintiff's injury must have been caused by some defect in the *424 product. Royal v. Black and Decker Mfg. Co., supra.
The strict liability theory has been specifically applied to soft drinks or alleged exploding bottles. Lee v. Crookston Coca-Cola Bottling Company, 1971, 290 Minn. 321, 188 N.W.2d 426; Pittsburg Coca-Cola Bottling Works v. Ponder, Tex. 1969, 443 S.W.2d 546; Shoshone Coca-Cola Bottling Company v. Dolinski, 1966, 82 Nev. 439, 420 P.2d 855. In particular, the case of Lee v. Crookston, supra, discusses the degree of proof necessary to support a finding that the product was defective. The Supreme Court of Minnesota points out that the res ipsa loquitur basis for recovery in a negligence case applies with equal force to excuse a plaintiff from proving a specific defect when pursuing recovery on a theory of strict liability especially in exploding bottle cases where the product is destroyed by reason of the defect:
"... In short, under the theory of strict liability plaintiff should not be required to prove specifically what defect caused the incident, but may rely upon circumstantial evidence from which it can reasonably be inferred that it is more probable than not that the product was defective when it left defendant's control." (188 N.W.2d 426, 434.)
See footnotes 18 and 20, 13 ALR3d, p. 1067.
As our Supreme Court did in Toombs, supra, extending the theory of recovery on implied warranty to a bystander, the theory of strict liability, likewise, has been extended to innocent bystanders (non-users). In adopting this view the Court of Appeals of New York in Codling v. Paglia, supra, 345 N.Y.S.2d at p. 467, 298 N.E.2d at p. 627, stated:
"`To restrict recovery to those who are users is unrealistic in view of the fact that bystanders have less opportunity to detect any defect than either purchasers or users. Our decision is one of policy but is mandated by both justice and common sense.' (Ciampichini v. Ring Bros., 40 A.D.2d 289, 293, 339 N.Y.S.2d 716, 720, supra.)"
The foregoing language is indistinguishable from the rationale employed by the Supreme Court in Toombs in extending the implied warranty liability "to those persons one `should expect to use the chattel lawfully or to be in the vicinity of its probable use'". Toombs, supra, 208 So.2d at p. 617. See also Ciampichini v. Ring Bros., Inc., 1973, 40 A.D.2d 289, 339 N.Y.S.2d 716; Weber v. Fidelity & Casualty Insurance Co. of N.Y., 1971, 259 La. 599, 250 So.2d 754; Caruth v. Mariani, 1970, 11 Ariz. App. 188, 463 P.2d 83; Elmore v. American Motors Corporation, 1969, 70 Cal.2d 578, 75 Cal. Rptr. 652, 451 P.2d 84; see also annotation Products Liability: Extension of Strict Liability in Tort to Permit Recovery by a Third Person Who Was Neither a Purchaser Nor User of Product, 33 ALR3d 415.[5]
In my view, the time has come when the courts "instead of rationalizing broken field running, should lay down a broad principle, eschewing the temptation to devise more proliferating exceptions", Codling v. Paglia, supra. In a products liability case, an injured plaintiff ought to be permitted recovery against the manufacturer for defective products on the theory of *425 strict liability in tort regardless of whether the plaintiff is a consumer, user or bystander. See Toombs and Lawnlite, supra. Traditional notions of justice and fair play would dictate such a result. The requirement of privity and the fiction of implied warranty ought to be laid to rest unceremoniously and supplanted by the concept of strict liability in tort. As stated in 13 ALR3d, supra, at page 1075:
"`In enunciating the concept of strict liability, the courts have served at least two venerable and traditional ends. They have stripped away the vestigial remnants which rendered the warranty action so cumbersome and inadequate and restored simplicity and attention to substance (rather than form) in the field of products liability. They have also reminded American industry of its traditional quest for excellence and workmanship, and of its inescapable responsibility for providing these. Despite the alarms, a manufacturer or merchandiser still has a complete defense to an action in strict liability: a product free from defects.'"
Accordingly, I would grant rehearing, withdraw our opinion of May 24, 1974 and reverse the final judgment in favor of Coca Cola, remanding the cause with the direction that plaintiffs' claim predicated upon implied warranty be reinstated and plaintiffs granted a new trial.[6]
NOTES
[1] Food Fair Stores, which was a defendant below, was not made a party to this appeal.
[2] In 25 U. of Miami L.R., 241, entitled "Products Warranty Law in Florida  a Realistic Overview", the writers aptly observed, at p. 265: "The dangerous instrumentality exception to the privity requirement, unfortunately, is neither clearly defined nor readily comprehensible. The fact that a product, which is neither fit for use nor merchantable, causes injury to a person should automatically invoke the characterization of being dangerous. However, the judiciary has envisioned a difference between commodities that inflict harm, labeling some as dangerous while others as inherently nondangerous... ."
[3] TOPIC 5 STRICT LIABILITY
 § 402 A. Special Liability of Seller of Product for Physical
 Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) the seller has exercised all possible care in the preparation and sale of his product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
[4] The concept of strict liability in tort was recently applied by this court to a retailer in Keller v. Eagle Army-Navy Department Stores, Inc., Fla.App. 1974, 291 So.2d 59. See also 13 ALR3d 1099.
[5] As the court observed in Codling v. Paglia, supra, 345 N.Y.S.2d at 467, 298 N.E.2d at 627: "`The ultimate purpose in widening the scope of the warranty is to cast the burden on the manufacturer who put his product in the marketplace.' (Singer v. Walker, 39 A.D.2d 90, 97, 331 N.Y.S.2d 823, 831, supra.) `There would appear to be no logic or reason in denying a right to relief to persons injured by a defective dangerous instrumentality solely on the ground that they were not themselves a user of the instrument. * * * Manufacturers of articles which may be a source of danger to several people if not properly manufactured should not be immune from liability for breach of implied warranty, a tortious wrong, to persons injured by a defectively manufactured article, where the manufacturer could reasonably contemplate injury to such persons by reason of the defect.'"
[6] Plaintiffs should also be afforded the opportunity (if they so choose) to amend their complaint to comport with the concept of strict liability in tort.