309 So.2d 69 (1975)
Robert Lee FAVORS and Buddy L. Sansing, Appellants,
v.
The FIRESTONE TIRE & RUBBER COMPANY, an Ohio Corporation, et al., Appellees.
Nos. 73-552, 73-553.
District Court of Appeal of Florida, Fourth District.
February 14, 1975.
Rehearing Denied March 24, 1975.
*70 C.R. McDonald, Jr., Fort Pierce, for appellants.
Monroe E. McDonald and Brian C. Sanders of Sanders, McEwan, Mims & McDonald, Orlando, for appellee Ford.
George H. Moss of Jones, Paine & Foster, Vero Beach, for appellee Sunrise.
PER CURIAM.
Plaintiffs, Robert Lee Favors and Buddy L. Sansing, take this consolidated appeal from a final judgment in favor of defendants, Ford Motor Company and Sunrise Motor Company, entered by the trial court after dismissal of plaintiffs' sixth amended complaints (although filed in separate cases, the sixth amended complaints are identical except for the names of the claimants and will hereafter be referred to as "the complaint"). Motion of the third defendant, The Firestone Tire & Rubber Company, to dismiss the complaint was denied by the trial court and the case remains pending below against this defendant. The defendants will hereafter be referred to as Ford, Sunrise and Firestone.
The complaint alleges that on May 20, 1968, Sunrise sent a 1968 Ford truck to The Goodyear Store in Ft. Pierce, Florida, to have the tires changed  specifically to have 900 x 20 tires mounted on the RH-5 wheels and rims with which the Ford truck was equipped. Plaintiffs, employees of The Goodyear Store, proceeded to mount 900 x 20 tires on the RH-5 wheels and rims as requested by Sunrise. Shortly after one of the tires was mounted, the rim pulled apart, exploded, and came off the wheel with great force, seriously injuring *71 plaintiffs. It is alleged that the wheel and rim assembly which injured plaintiffs was designed and assembled by Firestone, sold to Ford, and incorporated by Ford into the 1968 Ford truck on which plaintiffs were working. The completed truck, including the offending wheel and rim, were sold by Ford as its own product.
Counts one, two and five were directed againt Ford and Firestone; counts three and four were directed against Sunrise.
The trial court sustained counts one and two of the complaint as against Firestone (except that references to strict liability in count one were stricken), but dismissed these counts against Ford. In so ruling the trial court failed to follow the principle now established in Florida law that an assembler of a product which includes a component part manufactured by another who sells the completed product as its own and thereby represents to the public that it is the manufacturer is considered the manufacturer of the component part for purposes of liability for personal injury resulting from use of the component part.[1] Application of this principle in light of the allegations in the complaint that the wheel and rim which caused plaintiffs' injuries were designed and manufactured by Firestone and incorporated by Ford into the 1968 Ford truck which Ford sold as its own product would require a similar ruling as to the sufficiency of the complaint against each of these defendants.
Appellants contend that the trial court erred in dismissing each of the five counts of the complaint. We will consider each count separately.
In count one plaintiffs seek to recover on the conventional theory of breach of implied warranty[2] as well as the theory of strict liability. We find the count sufficient under an implied warranty theory. It is alleged in this count that by reason of improper design or manufacture by defendants Ford and Firestone the wheel and rim assembly was not safe for its intended use and inherently dangerous to persons in the vicinity of its probable use. The design defects relied on are specified in the pleading; and causal connection between the specified design defects and the explosion of the rim off the wheel resulting in plaintiffs' injury is asserted.
We find that the allegations of count one set forth a sufficient claim for relief for breach of implied warranty within the rule contained in the Restatement of Torts which has been approved in Florida.[3]
Appellees contend that plaintiffs are barred from recovering from Ford and Firestone under the theory of implied warranty by reason of lack of privity. This contention is without merit. Former requirements of privity in an action by a foreseeable user of a product against the manufacturer charging breach of implied *72 warranty have been abrogated in Florida.[4] We find that count one alleges ultimate facts which are sufficient for a cause of action under implied warranty against defendant Ford. The theory as to strict liability should be stricken inasmuch as it has not been recognized in Florida. See dissent, Mattes v. Coca Cola Co., 311 So.2d 417 (4th D.A.C.Fla. 1974). It was error to dismiss count one of the complaint, as the implied warranty claim was valid.
We turn to count two of the complaint which alleges negligence on the part of defendants Ford and Firestone. This court alleges that these defendants negligently designed the locking rim and wheel and negligently failed to test the wheel assembly with the result that the wheel assembly was inherently unsafe, negligently failed to investigate similar explosions of similar wheels and rims so as to do proper research and correct the causes thereof, negligently failed to warn users of the dangerous propensities of the wheel assembly of which they knew or should have known; and that as a result thereof plaintiffs were injured when the rim pulled apart and exploded off the wheel while plaintiffs were mounting a tire on the wheel assembly which had been negligently designed and manufactured by defendants Ford and Firestone. We find that count two sufficiently stated a claim for relief based upon negligence of defendants Ford and Firestone and the trial court erred in dismissing this count as to defendant Ford.
Count three against Sunrise claims damages for violation of the Uniform Commercial Code warranty section (§ 672.2-314, Florida Statutes 1967). It is alleged in this count that Sunrise contracted with The Goodyear Tire Store to change certain tires from an old truck to the new 1968 Ford truck previously referred to and that plaintiffs, employees of The Goodyear Tire Store, were injured when the outside dual rim on the 1968 Ford truck pulled apart and exploded as previously described. This count is insufficient for the reason that there was no sale alleged on the part of Sunrise so as to invoke the Uniform Commercial Code, Article 2, warranty provisions for the benefit of planitiffs. The delivery of the 1968 Ford truck to plaintiffs' employer for the purpose of having the tires changed was not a sale but a bailment for mutual benefit.[5] Uniform Commercial Code, Article 2, sales warranties usually have not been regarded as directly applicable to bailments or chattel lease transactions, but courts in some cases have applied sales warranties by analogy to chattel lease transactions.[6] The bailment involved in the case subjudice was not similar to a sale and we see no reason to extend Uniform Commercial Code warranties to this type of bailment. We affirm *73 the action of the trial court in dismissing count three of the complaint.
Count four is a negligence count against defendant Sunrise which reiterates the factual situation set forth in count three and alleges several negligent acts and omissions on the part of defendant Sunrise, including allegations that Sunrise negligently intermingled 6.0 inch rims with 6.5 inch rims on the 1968 Ford truck and ordered 900 x 20 tires installed thereon although Sunrise knew or should have known that tires of this size were not suitable for mounting on 6.0 inch rims and that Sunrise negligently failed to warn plaintiffs of the danger inherent in mounting 900 x 20 tires on the 6.0 inch rims on the truck. Causal connection between the negligence charged and the injury to plaintiffs is asserted. We find that count four sufficiently stated a cause of action in negligence against defendant Sunrise and that dismissal of count four by the trial court was error.
In count five plaintiffs base their claim against Ford and Firestone on the implied warranty provisions of the Uniform Commercial Code (§ 672.2-314, Florida Statutes 1967). The warranty sought to be invoked in count five is a contractual warranty of merchantability of goods which in the language of the statute is implied in a contract for their sale. We do not construe the sales warranty provisions of the Uniform Commercial Code as governing the rights and duties between a user of the goods and a remote manufacturer with whom the user has no privity of a contract. See Ford Motor Co. v. Pittman, 227 So.2d 246 (Fla.App. 1969); Schuessler v. Coca-Cola Bottling Co. of Miami, 279 So.2d 901 (Fla.App. 1973). Section 2-318 of the Uniform Commercial Code (§ 672.2-318, Florida Statutes 1965) extended the benefits of the same warranty received by the buyer in a contract of sale to members of the family or household or guests in the house of the buyer by designating such persons as third party beneficiaries of the contract of sale. By amendment in 1967 the Florida legislature added employees, servants and agents of the buyer to this group of third party beneficiaries (§ 672.2-318, Florida Statutes 1967). In an attempt to bring plaintiffs into this group of third party beneficiaries of the sale contract between Ford and Sunrise, it is alleged in count five that plaintiffs were employees of an agent of Sunrise and as such were employed by the defendant Sunrise to mount tires on wheel assembly previously described. This allegation is confusing since the facts alleged fail to establish any agency relationship between Sunrise and plaintiffs' employer Goodyear nor any employer-employee relationship between Sunrise and plaintiffs. We affirm the trial court's dismissal of count five of the complaint.
The final judgment appealed from is affirmed in part, reversed in part and remanded to the trial court for further proceeding in accordance with this opinion.
WALDEN and DOWNEY, JJ., concur.
FARRINGTON, OTIS, Associate Judge, concurs in part, dissents in part.
FARRINGTON, OTIS, Associate Judge, (concurring in part, dissenting in part):
I concur with the majority opinion with the exception of the portion thereof striking plaintiffs' claim for relief based on the doctrine of strict liability in tort.
My examination of recent Florida cases in the field of products liability indicates a definite trend in Florida toward adoption of the doctrine of strict liability in tort as set forth in Restatement, Second Torts, Sec. 402A and introduced into the case law of the United States in the landmark case of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, (1963) 377 P.2d 897, 13 A.L.R.3d 1049. Since 1963 this doctrine has swept the country so that by 1971 it was accepted and applied by *74 some two-thirds of the courts. Prosser, Torts, Sec. 98 pp. 657-658 (4th ed. 1971).
In the recent case of Keller v. Eagle Army-Navy Department Stores, 291 So.2d 58 (4th D.C.A.Fla. 1974), in equating the liability of a retailer with that of a manufacturer for marketing a product alleged to be a dangerous instrumentality in fact, this court applied the strict liability Section 402 A of the Second Restatement of Torts, quoting the section with apparent approval. In Royal v. Black and Decker Manufacturing Co. 205 So.2d 307 (3d D.C.A.Fla. 1967), the doctrine of strict liability in tort was recognized and discussed although the trial court was affirmed in its dismissal of the complaint for failure to allege facts from which reasonable men might conclude that the product under consideration was unreasonably dangerous or defective. See also the case of Barfield v. U.S. Rubber Co., 234 So.2d 374 (2d D.C.A.Fla. 1970).
As was stated by Judge Mager in his dissenting opinion in the case of Mattes v. Coca Cola Bottling Co. of Miami, Fla., 311 So.2d 417 (4th D.C.A.Fla. 1974):
"... In a products liability case, an injured plaintiff ought to be permitted recovery against the manufacturer for defective products on the theory of strict liability in tort regardless of whether the plaintiff is a consumer, user or bystander... . The requirement of privity and the fiction of implied warranty ought to be laid to rest unceremoniously and supplanted by the concept of strict liability in tort."
I agree with the quoted portion of the dissenting opinion of Judge Mager in Mattes and dissent from the portion of the majority opinion which states that plaintiffs' theory as to strict liability should be stricken. I would hold that count one of plaintiffs' complaint stated a valid claim for relief under the doctrine of strict liability in tort as well as under the theory of implied warranty.
NOTES
[1] Holman v. Ford Motor Co., 239 So.2d 40 (Fla.App. 1970); King v. Douglas Aircraft Co., 159 So.2d 108 (Fla.App. 1964); Restatement, Second, Torts, § 400.
[2] Appellee Ford contends that Florida cases on implied warranty prior to adoption of the omnibus Uniform Commercial Code which became effective January 1, 1967, are no longer relevant since the Uniform Commercial Code pre-empted this area where applicable. We disagree with this contention and approve the view expressed in the case of Ford Motor Co. v. Pittman, 227 So.2d 246 (Fla.App. 1969), that the implied warranty doctrine developed in Florida prior to adoption of the Uniform Commercial Code is still viable.
[3] Restatement of Torts (Second) § 398, is as follows:

"§ 398. Chattel Made Under Dangerous Plan or Design
A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probably use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."
This rule has been approved in Florida in the cases of Matthews v. Lawnlite Co., 88 So.2d 299 (Fla. 1956), and King v. Douglas Aircraft, supra. Plaintiffs were foreseeable users of the product within the meaning of this rule.
[4] As was stated in the case of Vandercook & Son, Inc. v. Thorpe (5th Cir.1965) 344 F.2d 930, construing Florida law:

"... We now conclude that under Florida law a manufacturer, as distinguished from the retailer of a product, may be held liable for breach of the implied warranty that the product manufactured is reasonably fit for the purposes intended without regard to whether the plaintiff is in privity of contract ... it is enough that the injured person be one of those reasonably intended to use the machine, and that when the injury occurred, the machine was being used generally in the manner intended."
See also Barfield v. Atlantic Coast Line Railroad Co., 197 So.2d 545 (Fla.App. 1967); Manheim v. Ford Motor Co., 201 So.2d 440 (Fla. 1967).
[5] The type of bailment with which we are concerned here has been classified as a bailment locatio operis faciendi, or hiring of work or labor upon a thing. 8 Am.Jur.2d, Bailments § 5 at 919 and § 155 at 1048.
[6] Florida has applied the Uniform Commercial Code, Article 2, warranty provisions by analogy to a chattel lease bailment where it was alleged that the lessee relied on the lessor's skill or judgment to furnish a suitable chattel. W.E. Johnson Equipment Co. v. United Airlines, Inc., 238 So.2d 98 (Fla. 1970).