SEE, Justice.
CSX Transportation, Inc. (“CSX”), is a railroad company that owns and maintains the track over which its trains run. CSX employees pack, or tamp, crushed stone under the tracks to keep the rails level. Tampers are used to pack the stone. A tamper is a hydraulic machine that operates much like a jackhammer, with two opposing handles at the top and an opening at the bottom into which is fitted a tool bit that is about 18 inches long with a spade-shaped tip that is about 6 inches wide. The tool bit moves rapidly up and down and is held in place by a latch that locks against a collar on the bit. CSX bought a shipment of tampers from Mat-weld, Inc. (“Matweld”), in 1990.
Matweld purchases its tampers from a Danish company, Lifton A.S. The tampers arrive at Matweld from Lifton fully assembled with the Matweld label affixed to them. Matweld installs transmission hoses on the Lifton tampers and then sells them. Matweld publishes operating manuals to accompany the tampers, and when the tampers need repair, CSX returns them to Matweld for repair.
Two CSX employees, Tom Dawson and Ronald Arnold, injured their backs in separate but similar accidents involving tampers. In each case, the latch on the tamper failed to hold the tool bit in place. The bit fell out, and the operator lurched forward with the machine in his hands, injuring himself. Dawson was injured in 1996, and Arnold was injured in 1998. Dawson and Arnold sued CSX in separate actions.
Both Dawson and Arnold were injured in Florida, and all parties agree that Florida substantive law should govern these cases, which were consolidated for discovery and trial. CSX settled with Dawson and Arnold before trial, paying Dawson $182,000 and Arnold $375,000. CSX, however, asserted against Matweld a third-party claim for indemnification and contribution under the Florida apparent-manufacturer’s-liability doctrine, alleging that Matweld had negligently manufactured the tamper and bit. The third-party claims against Matweld went to trial. The Jefferson Circuit Court made several findings of fact:
“At the time of the injuries, the bits were the original ones which came with the tampers and the equipment had been in use continually from 1990 until 1996 when Dawson was injured. The bit was not repaired or replaced until after the Arnold injury in 1998.
“Dawson was slightly injured when the bit unexpectedly fell out of the no-sepiece in January, 1996 but he made no claim for that injury. He did report the incident to the Roadmaster [supervisor] Ron McAlister, who order[ed] a ‘tie’ to be placed over the latch to keep it from inadvertently opening again.... The evidence is clear and convincing that the latch assembly and the collar on the bit were worn due to many years of hard service described by a witness as ‘brutal’ service. There is no evidence that CSX notified Matweld that there was any problem with the equipment before the injuries occurred. These machines had reached their service limits and beyond; they were worn out.... The court finds that neither the latch nor the bit was defective.”
The trial court further found that “in order to prevail on the indemnity claim *912 CSX must prove that (1) it was totally without fault and (2) that Matweld did or failed to do something which caused the plaintiffs’ injuries. Paul N. Howard Company v. Affholder, Inc., 701 So.2d 402 [ (Fl.Dist.Ct.App.1997) ]; Houdaille Industries, Inc., v. Edwards, 374 So.2d 490, 492-493 (Fla.1979).” The trial court found that Matweld could not be held liable for purposes of indemnifying CSX because the evidence at trial did not show that CSX was without fault or that Matweld did or failed to do something that resulted in Dawson’s and Arnold’s injuries.
The trial court next addressed CSX’s claim for contribution from Mat-weld. Florida law requires joint tortfea-sors individually to pay a portion of the loss in relation to each party’s relative fault. CSX was required to plead and prove that Matweld was jointly negligent and that the settlement amounts CSX paid Dawson and Arnold were not excessive. Home Ins. Co. v. Advance Mach. Co., 443 So.2d 165 (Fla.Dist.Ct.App.1983). The trial court determined that Matweld could not be found negligent in a produets-liability action because (1) the product (the tamper) was not defective, but merely worn out through prolonged hard use; and (2) even if the cause of the accidents was a defect in the product caused by Matweld, Matweld had no knowledge of the alleged defect. See Carter v. Hector Supply Co., 128 So.2d 390 (Fla.1961); Ryan v. Atlantic Fertilizer & Chem. Co., 515 So.2d 324 (Fla.Dist.Ct.App.1987). Therefore, the trial court denied CSX contribution from Mat-weld for Dawson’s and Arnold’s injuries.
CSX argues on appeal that the trial court erred in holding that Matweld was merely a seller of the tampers, and not an apparent manufacturer subject to Florida’s apparent-manufacturer’s-liability doctrine. That doctrine is described in Favors v. Firestone Tire & Rubber Co., 309 So.2d 69, 71 (Fla.Dist.Ct.App.1975), as follows:
“[A]n assembler of a product which includes a component part manufactured by another who sells the completed product as its own and thereby represents to the public that it is the manufacturer is considered the manufacturer of the component part for purposes of liability for personal injury resulting from use of the component part.”[1]
(Footnote omitted.)
CSX argues that whether Matweld is liable in this case turns on whether Florida’s apparent-manufacturer’s-liability doctrine applies to Matweld, an issue that CSX portrays as one involving a matter of law, not fact. However, for the trial court to determine whether, as Florida’s apparent-manufacturer’s-liability doctrine requires, Matweld was the “apparent” manufacturer of the tampers, it first had to determine whether Matweld was “an assembler of a product which includes a component part manufactured by another.”
The trial court heard evidence that the tampers arrived preassembled from Lifton and that Matweld merely attached transmission hoses to the preassembled tampers before testing them and shipping them to CSX and other buyers. After considering the evidence, the trial court found as follows:
“Matweld purchased the tampers and bits from Lifton USA, Inc., or Lifton A.S. d/b/a Breakers A.S. (Lifton). The manufacturer or designer of the tamper and bit [Lifton] placed ‘Matweld’ identification marks on the tamper at the factory, but Matweld did not alter either the tamper or the bit prior to selling them to CSX.”
*913 The trial court also found, in the section of its order discussing indemnification, that
“[t]he evidence is clear that Matweld did not design or manufacture the equipment upon which the plaintiffs were injured. Matweld sold the equipment to CSX in the same condition as when it received the equipment from Lifton. Under Florida law, a seller does not have the same liability as a manufacturer. Matweld as the seller had no duty to CSX or its employees.”
On these facts, Matweld was not an apparent manufacturer, that is, it was not “an assembler of a product which includes a component part manufactured by another who sells the completed product as its own.” Favors, 309 So.2d at 71. Instead, it was a seller of a product manufactured by another.
CSX argues that the trial court’s ruling in favor of Matweld was contrary to the great weight of the evidence.[2] Conclusions of fact based on ore tenus evidence are entitled to a presumption of correctness and “ ‘will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence.’ ” Marvin’s Inc. v. Robertson, 608 So.2d 391, 393 (Ala.1992) (quoting McCoy v. McCoy, 549 So.2d 53, 57 (Ala.1989)).[3] The trial court’s findings of fact are supported by the evidence in the record and are not palpably wrong or manifestly unjust. See Marvin’s, Inc., 608 So.2d at 393. CSX, therefore, has not shown that the judgment in favor of Matweld was against the great weight of the evidence.
Applying Florida’s apparent-manufacturer’s-liability doctrine to the facts it found, the trial court concluded that Mat-weld was merely the seller of the tamper, not its manufacturer. We agree.
We, therefore, affirm the trial court’s holding that Matweld has no liability for indemnity or contribution to CSX under Florida law.
AFFIRMED.
MOORE, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.

. CSX argues that as an apparent manufacturer Matweld had a duty under Barfield v. Atlantic Coast Line R.R., 197 So.2d 545 (Fla.Dist.Ct.App.1967), to inspect its product for latent defects.

. The parties agree that this case should be governed by Florida substantive law. On the question of the weight of the evidence, CSX asserts, and Matweld does not contest, that the application of the Alabama ore tenus rule and the exceptions to it is appropriate in this case. The issue whether the ore tenus rule is substantive law or procedural law has not been raised by the parties. We do note, however, that the standard Florida appellate courts apply to the judgments of lower courts is substantially the same standard as that applied by Alabama appellate courts. See Jordan v. Boisvert, 632 So.2d 254 (Fla.Dist.Ct.App.1994)(a trial court's judgment is entitled to a presumption of correctness, and its findings will not be disturbed on appeal in the absence of a clear showing that the trial court committed error or that the judge’s conclusions were clearly erroneous), and Hill v. Parks, 373 So.2d 376, 377 (Fla.Dist.Ct.App. 1979)(”While the judgment of a trial court comes to an appellate court clothed with a presumption of correctness, reversal is nevertheless required where it is clear that the trial court misapplied the law to the facts before it, or that its ruling is against the manifest weight of the evidence.”).

. CSX argues that this case qualifies for one of the exceptions to the presumption of correctness given conclusions of fact based on ore tenus evidence, that is, (1) when the trial court reaches erroneous conclusions of law, or (2) when the trial court misapplies the law to the facts. Eubanks v. Hale, 752 So.2d 1113 (Ala.1999); Jayroe v. Hall, 624 So.2d 522 (Ala.1993). However, the trial court was correct in its determination of the applicability of Florida's apparent-manufacturer’s-liability doctrine and in its application of that doctrine to the facts found by the court.